IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 98-488C<br>(Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME TO COMPLETE FACT DISCOVERY AND FOR CLARIFICATION OR MODIFICATION OF MARCH 23, 2004 SCHEDULING ORDER**

Pursuant to Rule 6(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests an enlargement of time of 90 days, up to and including November 1, 2004, to complete fact discovery pursuant to the Court's scheduling order. Fact discovery is currently scheduled to be completed by August 2, 2004. Defendant further requests, as described in this motion, that the Court modify other aspects of its March 23, 2004 scheduling order. This is defendant's first request for an enlargement of time for this purpose. Plaintiff, Sacramento Municipal Utility District ("SMUD"), opposes defendant's request.

BACKGROUND

As the Court is well aware, this is one of 64 cases currently pending before the Court of Federal Claims involving the Department of Energy's ("DOE") Standard Contract for the Disposal of Spent Nuclear Fuel and High-Level Radioactive Waste ("Standard Contract"). 10 C.F.R. § 961.11 (1983). The main terms of the Standard Contract that was signed by each of the spent nuclear fuel ("SNF") plaintiffs are essentially identical, raising the same issues relating

to the rate and schedule of SNF acceptance in each case. All the SNF plaintiffs are seeking damages for their additional costs of storing SNF because of DOE's failure to timely begin acceptance of SNF pursuant to the Standard Contract.

Beginning in 1998, Standard Contract holders filed complaints in the Court of Federal Claims, alleging that the Government breached the Standard Contract by failing to begin SNF acceptance by January 31, 1998. Initially, the Government sought to dismiss these complaints because the plaintiffs failed to seek a remedy from DOE pursuant to the Delays clause in the Standard Contract. 10 C.F.R. § 961.11, Art. IX. After a split of opinion developed on the issue of whether Standard Contract holders were required to exhaust their administrative remedies before they could maintain an action in this Court, Yankee Atomic Power Co. v. United States, 42 Fed. Cl. 223, 231-35 (1998), Northern States Power Co. v. United States, 43 Fed. Cl. 374, 388 (1999), the United States Court of Appeals for the Federal Circuit concluded that the Standard Contract holders were not required to exhaust their administrative remedies, Northern States Power Co. v. United States, 224 F.3d 1361, 1367 (Fed. Cir. 2000), and that, in at least three of the cases, the Government's delay in beginning SNF acceptance constituted a breach of the Standard Contract. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1343 (Fed. Cir. 2000).

Following the Federal Circuit's decisions, it was readily apparent that a coordinated discovery process was necessary to permit the numerous cases that had been filed at that point to proceed. On January 9, 2001, the Government filed a motion requesting then-Chief Judge Baskir to reassign the pending SNF cases to a single judge for determination, in a consolidated proceeding, an acceptance and priority schedule regarding DOE’s obligation to accept SNF. The

plaintiffs opposed the Government's motion and, instead, proposed that the parties participate in coordinated discovery on the rate and schedule issues. The Court deferred action upon the Government's consolidation motion and ordered a coordinated discovery proceeding. By July 2001, the parties had developed a plan to proceed with discovery for 15 of the 18 utility plaintiffs, and Judge Sypolt was tasked to preside over the coordinated discovery proceedings.

The Government filed several partially dispositive motions in November 2001. In all the pending SNF cases, the Government filed motions for partial summary judgment regarding the rate and sequence in which DOE was obligated to accept SNF pursuant to the Standard Contract. The Government also filed summary judgment motions on the issue of whether the Standard Contract applies to Greater-than-Class-C ("GTCC") radioactive waste. Where appropriate, the Government also filed motions to dismiss takings and illegal exaction claims.[1]

In January 2002, before any of the plaintiffs had responded to the Government's motions, plaintiffs began taking coordinated discovery regarding the rate and schedule issues.[2] Following the close of that process, most of the utility plaintiffs had filed responses to the Government's

[1] The Government filed a motion to dismiss SMUD's takings claims, Counts IV and V of its complaint, and a motion for partial summary judgment regarding GTCC on Novermber 27, 2001 (Docket entries ## 91, 92). On November 28, 2001, the Government filed a motion for partial summary judgment with regard to the rate of SNF acceptance. (Docket entry # 97) On December 13, 2001, the Government filed a motion to dismiss SMUD's illegal exaction claim, Count III of its complaint. (Docket entry # 98). These motions are pending before the Court.

[2] Because discovery was intended to permit the plaintiffs to respond to the Government's summary judgment motions, discovery was limited by the Court for most of the SNF plaintiffs. However, the Yankee plaintiffs proceeded on a separate discovery track which allowed them to take additional depositions of Government witnesses and permitted the Government to take depositions of Yankee witnesses.

summary judgment motions.[3] Many of the SNF plaintiffs also filed cross-motions for summary judgment.[4] In January 2003, the Government requested a deferment of its right to take depositions regarding SNF acceptance schedule issues pending resolution of the pending motions. However, several judges began to schedule or request proposals for further proceedings in individual cases. On February 14, 2003, the Government filed a second motion to the Chief Judge to renew consideration of the Government's pending motion to consolidate the SNF cases before a single judge.[5]

THE PARTIES' ACTIVITIES IN RESPONSE TO THE COURT'S SCHEDULING ORDER

On March 23, 2004, this Court issued a scheduling order in this case which, among other things, directed the parties to complete fact discovery on or before August 2, 2004. The parties have exchanged a great deal of information pursuant to that order. In its RCFC 26(a)(1) initial disclosures, SMUD provided the Government with a preliminary quantification of its damages on April 16, 2004. The parties also have exchanged interrogatories, responses to interrogatories, and the production of documents.

On May 14, 2004, following the receipt of SMUD's preliminary damages information, the Government served the plaintiff with its Second Supplemental Request for Production of

---

[3] SMUD and the other SNF plaintiffs responded to the Government's motions on December 16, 2002. (Docket entries # 159, 162, 165).

[4] SMUD filed a cross-motion regarding the rate of SNF acceptance on December 16, 2002. (Docket entry #165).

[5] The Government filed replies to SMUD's responses to the takings and illegal exactions claims on January 31, 2003. (Docket entry #183). The Government filed its reply to the GTCC motion on March 18, 2003. (Docket entry # 194). The Government filed its reply to SMUD's response to the rate of acceptance motion and response to SMUD's cross-motion on April 11, 2003. (Docket entry #202).

Documents Relating to Damages. As part of this discovery request, the Government sought the production of certain SMUD financial and accounting system data - related to the preliminary damages information - in an electronic format. The Government anticipates that the receipt of extensive amounts of financial and accounting data in electronic format would facilitate the Government's review of SMUD's damages claim, which exceeds $60 million for the period of 1997 to 2003. In addition, the receipt of such data in electronic format will facilitate the efficient review of what SMUD has described as approximately 200 boxes of "invoices" located at its Rancho Seco facility.

Specifically, the Government sought data in electronic format in two categories: (1) general ledger or accounting system detail, by year, by cost element, and by individual transaction, for each "work order number" to which costs were recorded for the period 1997-2003, including both claimed and unclaimed work order numbers and a description of the underlying costs and sufficient detail to determine the nature and source of each cost element; and (2) payroll registers, certified payrolls, timecards, and other records to support any internal labor items included in any "work order number" to which costs were recorded for the period 1997-2003.

The Government request noted that "such data should preferably be provided in electronic format such as Microsoft Access, or Microsoft Excel, or as a text file delimited with the "~" character." In subsequent telephone discussions with SMUD's counsel, the Government learned that, since approximately 1999, SMUD has used a SAP accounting system for the Rancho Seco facility. SMUD's counsel asserted that, although SMUD was not obligated to provide the data in electronic formats such as Microsoft Access or Excel, SMUD agreed to provide the Government

with the April 16, 2004 "preliminary damages information" in electronic format (Microsoft Excel) by June 5, 2004. In addition, SMUD tentatively agreed to provide the Government access to the Rancho Seco SAP system, in read-only format, through a computer terminal at the site. This access would provide the Government with the ability to download certain financial and accounting data into an accessible electronic format and/or produce hard copies of the requested data. SMUD noted that it was working on the access issue and was "hopeful" that access could be arranged for the week of June 14, 2004. In the meantime, the Government reviewed other boxes of documents at SMUD's Rancho Seco facility during the week of June 7, 2004.[6]

The parties have agreed that the Government shall be allowed to take at least 22 fact witness depositions, not including any depositions the Government takes pursuant to Rule 30(b)(6), while SMUD shall be permitted to take an additional 12 fact witness depositions in addition to the 13 depositions that SMUD has already taken in the coordinated discovery

---

[6] On June 8, 2004, the Government completed its initial review of 35 boxes of documents produced by SMUD and made available at the Rancho Seco site. The Government identified specific documents within those boxes for further processing. Ten of the boxes contained documents that were identified as "original" SMUD documents. As agreed by the parties, the original documents within those 10 boxes marked by the Government will be copied by SMUD personnel. The copies of the original documents will then be processed and ultimately produced to the Government. As to the remaining 25 boxes of documents reviewed on June 8th, the Government engaged the services of IKON Office Solutions ("IKON") to process the documents, along with a limited number of photographs, and video and audio tapes. IKON was instructed to pick up the 25 boxes from Rancho Seco, scan the selected documents, identify all documents with a Bates stamp, produce the documents in both electronic format on endorsed compact discs and in a numbered hardcopy set, and then return the boxes to Rancho Seco.

While at the Rancho Seco facility on June 8th, SMUD informed the Government that the SAP system would likely be made available for the Government to access as early as Wednesday, June 9, 2004. As a result, the Government made arrangements to have two contractors return to Rancho Seco on June 8th to initiate the Government's access to the SAP system. The contractors were able to log onto the SAP system and spent approximately four hours familiarizing themselves with the system, but did not download any electronic data.

proceedings in this matter.[7] The parties are currently in the process of scheduling those depositions at a mutually convenient time and place.[8] Additionally, plaintiff has not yet provided the Government with its final damage figures in this matter. As a result, there exists a strong possibility that the Government may need to re-depose some individuals if plaintiff provides the Government with its final damage calculations after the completion of some of the depositions. Moreover, the lead attorney in this matter for the Government, Russell A. Shultis, and other attorneys in this office are scheduled to be in trial for seven weeks beginning July 12, 2004 in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.); Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.); and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.). This trial coincides with the bulk of this discovery period in this case and will make it very difficult for the Government to complete fact discovery during the time specified in this Court's March 23, 2004 scheduling order.

THE NEED FOR ADDITIONAL TIME TO COMPLETE FACT DISCOVERY

Even though a great deal of activity has occurred since March 23, 2004, the parties now

[7] As the Government stated in its motion filed May 19, 2004, the Government generally has no objection to SMUD's request to use the depositions and trial testimony of Government witnesses and contractors taken in other SNF cases for evidentiary purposes, as if they were taken in this case, subject to the admissibility of the testimony under the Federal Rules of Evidence and the Rules of the Court of Federal Claims. However, as we also stated in our motion, the Government opposes the use at trial of the deposition or trial testimony of the Government's expert witnesses from other cases, where the expert has not been identified as a testifying expert in this case.

[8] The Government has attempted to schedule the depositions of Ken Miller, Bob Jones, Jerry Delezenski, Rita Bowser, Dennis Gardiner, Ed Smeloff, Saul Levy, Roger Powers and Tom LaGuardia. Many of the witnesses reside in the Sacramento, California area, but some reside at other locations within the United States and at least one individual lives in the United Kingdom. The Government has scheduled some of these depositions for the week of June 14, 2004 and is in the process of locating the other individuals.

have less than 60 days to complete the agreed-upon 34 depositions, plus the Government's 30(b)(6) depositions, and to gather and produce the requested documents. Additionally, the Government has very little time to process and analyze that information and to respond to SMUD's expert reports and prepare the Government's expert reports, which are currently due on August 23, 2004. It is clear that those tasks cannot be properly completed within the scheduled time. Finally, any appeals in Indiana Michigan Power Co. v. United States, No. 98-486C (Fed. Cl.), such as on the issue of future damages, will likely affect the damages issues involved in the discovery process in this case. Because the scheduling order requires that the parties seek supplemental discovery by June 14, 2004, the Government thought the preferable course was to seek an additional 90 days to complete fact discovery at this time, well before fact discovery is about to close.

In making this request, we are mindful of the fact that a change in the close of fact discovery will potentially have the effect of changing the dates for submission of expert reports, completion of expert discovery, submission of pretrials, and, ultimately, the scheduled trial date. Unfortunately, we cannot suggest any way to avoid this effect. However, consistent with the Court's June 14, 2004 deadline which seeks to deal with scheduling problems as soon as possible, we believe that dealing with this issue now is preferable to having to do so later

REQUEST FOR CLARIFICATION OR MODIFICATION
OF THE COURT'S MARCH 23, 2004 SCHEDULING ORDER

The Government also seeks clarification or modification of several aspects of the Court's March 23, 2004 scheduling order. First, paragraph number four states that the identity of experts must be disclosed by July 2, 2004. However, plaintiff should have to identify its experts first and

then, given that the Government's role in this litigation is to provide a defense and a response to the plaintiff's damages claim, the Government should then be allotted a period of time in which to identify its experts. As a result, the Government should be permitted a period of 14 days after the disclosure of the plaintiff's experts in which to designate its experts to respond to the plaintiff. Similarly, in light of the fact that the parties are required to submit their expert reports three weeks before the close of fact discovery, pursuant to the March 23, 2004 scheduling order, the Government respectfully requests that this date also be moved to three weeks before the new close of fact discovery should the Court grant the Government's motion for enlargement of time to complete fact discovery.

Second, paragraph number five states that supplemental discovery motions are due before the end of either fact or expert discovery (August 2, 2004 and October 25, 2004 respectively). Under that paragraph, "any motions regarding supplemental fact or expert discovery will be filed on or before June 14, 2004." At the end of that paragraph, the order states that "Motions . . . will be allowed only if . . . the discovery sought is of a nature that could not reasonably have been obtained prior to close of discovery." Given that fact discovery does not currently close until August 2, 2004, we cannot yet identify whether supplemental fact discovery after the August 2, 2004 fact discovery deadline (or the new fact discovery deadline that will be established if the Court grants all or part of our request for an enlargement) will be necessary. Accordingly, we respectfully request that the Court modify its March 23, 2004 scheduling order so that motions for supplemental fact discovery are due 14 days after defendant receives plaintiff's expert reports.

Third, paragraph number seven states that plaintiff must file its memorandum of contentions of law and fact by November 29, 2004. This paragraph further states that the

Government must file "responses to any motions filed by plaintiff with its Memorandum on or before November 29, 2004." This requires the Government to file its responses to any motions filed by plaintiff on the same day that plaintiff's motions are filed. This schedule allows the Government literally no time to review the memorandum, and we presume that the date entered for the Government's responses to such motions was in error. We respectfully request that the Court modify the date for the Government's responses to allow the Government 21 days from the date the motions are filed before it must file its responses to those motions.

## CONCLUSION

For the foregoing reasons, defendant respectfully request that the Court grant this motion for enlargement of time to complete fact discovery and for clarification or modification of the March 23, 2004 scheduling order.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Department of Justice
Civil Division
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax:: (202) 307-2503

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

TODD COCHRAN
SCOTT DAMELIN
VICTORIA STROHMEYER
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

June 14, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 14th day of June 2004, a copy of foregoing "DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME TO COMPLETE FACT DISCOVERY AND FOR CLARIFICATION OR MODIFICATION OF MARCH 23, 2004 SCHEDULING ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Russell A. Shultis