IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) | |
| Plaintiff, | ) | No. 98-488 C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S RECOVERY OF FUTURE OR PROSPECTIVE DAMAGES**

Plaintiff, Sacramento Municipal Utility District ("SMUD"), hereby responds to Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Recovery of Future or Prospective Damages of June 7, 2004 ("Defendant's Motion") and respectfully requests that it be denied.

## Background

In this litigation, SMUD is seeking to recover the damages resulting from the government's failure to accept spent nuclear fuel ("SNF") in breach of the Standard Contract and the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10101 *et seq*. In return for substantial payments from SMUD and other utilities, the Standard Contract and the NWPA obligated the Department of Energy ("DOE") to begin accepting SNF for disposal in January 1998. The government, however, breached the Contract, by failing to begin accepting fuel in 1998. See Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342 (Fed. Cir. 2000). Further, the government has conceded that it will not begin accepting SNF from utilities until at the earliest 2010, i.e., that the breach of contract will continue for a minimum of 12 years. See

Yankee Atomic Elec. Co. v. United States, No. 98-126, 2004 WL 1535688, *1-4 (Fed. Cl. June 28, 2004).

As a result of the government's failure to accept SNF, SMUD was forced to construct its own dry storage facility – referred to as an Independent Spent Fuel Storage Installation or ISFSI – to store SNF until eventual performance by the DOE. SMUD constructed its on-site dry storage facility because it was a safer and ultimately cheaper method to store SNF than the existing wet storage pool during the long and uncertain period of the government's breach. Under the government's current (and optimistic) 2010 schedule, SMUD will be forced to store SNF on site for at least 12 years longer than it would have had DOE timely performed, i.e., until 2018 as opposed to 2006. SMUD will incur substantial operations, maintenance, and security ("OM&S") costs for its dry storage facility (and the highly radioactive SNF stored therein) during this minimum additional 12-year period.

On July 8, 2004, SMUD filed a Motion for an Order reserving its right to bring subsequent actions for damages accruing subsequent to the time period encompassed by the trial. See Plaintiff's Motion for an Order regarding Subsequent Actions for Future Damages, dated July 8, 2004 ("Plaintiff's Motion"). To the extent the Court is willing to preserve SMUD's ability to recover its future OM&S costs caused by the government's breach, SMUD is willing to forego seeking those costs in this case. SMUD's requested order would narrow the issues for trial and reduce the burden on the Court and the parties. Despite many requests by SMUD, however, the government still has not taken a position on Plaintiff's Motion.

Instead, the government has argued in its June 7, 2004 Motion that there is an absolute *per se* rule prohibiting the recovery of any future damages in a case alleging partial breach. The government also has asked the Court to rule that SMUD may only recover damages incurred up to the time of filing its Complaint in this case – June 9, 1998 – rather than up to the time of trial

or the period encompassed by the extensive discovery to date. Each of the government's arguments is without merit. In the absence of the order requested in Plaintiff's Motion, SMUD requests that the Court deny Defendant's Motion and allow SMUD to recover its past damages through the period encompassed by the trial and the future damages it will prove at trial.

## Argument

### A. SMUD's Future Damages Are Fully Recoverable Under Long-Established Principles Of Contract Law.

#### 1. SMUD's Damages Are Recoverable As Expectation Damages.

SMUD's future (and past) damages in this case are fully recoverable under well-established principles applied by the Federal Circuit and this Court. "The most basic principle of contract remedies is that damages should put the plaintiffs 'in as good a position pecuniarily as [they] would have been in if the contract had been completely performed.'" Home Sav. of America, F.S.B. v. United States, 57 Fed. Cl. 694, 723 n.47 (Ct. Cl. 2003) (citations omitted). The basic, black letter measure of damages that applies to SMUD's breach of contract claim is the expectation interest measure. "Expectation damages are generally measured by the 'loss in the value to [the injured party] of the other party's performance caused by its failure or deficiency, plus . . . any other loss, including incidental or consequential loss, caused by the breach . . . .'" Id. (citations omitted).

Expectation damages can include both mitigation expenses and the costs of providing substitute or alternative performance. E.g., RESTATEMENT (SECOND) OF CONTRACTS § 347 cmts. a, c (1981) (expectation interest measure includes costs to "arrange a substitute transaction" and "costs incurred in a reasonable effort, whether successful or not, to avoid loss"); accord Bluebonnet Sav. Bank, F.S.B. v. United States, 266 F.3d 1348, 1351-52 (Fed. Cir. 2001), subsequent appeal, 339 F.3d 1341 (Fed. Cir. 2003); Chain Belt Co. v. United States, 115 F.

Supp. 701, 714 (Ct. Cl. 1953). In that connection, this Court has routinely awarded future expectancy damages in breach of contract cases. E.g., Energy Capital Corp. v. United States, 302 F.3d 1314, 1334 (Fed. Cir. 2002) (affirming award of future lost profits for a "new venture"); Home Sav. of America, 57 Fed. Cl. at 717 (holding that plaintiff was entitled to recover damages for the cost of using retained earnings as substitute capital through the year 2025); Northern Helex Co. v. United States, 634 F.2d 557, 564 (Ct. Cl. 1980) (holding that plaintiff was entitled to recover anticipated future profits for the sale of helium to the government); see also Mech. Wholesale, Inc. v. Universal-Rundle Corp., 432 F.2d 228, 231 (5th Cir. 1970) (allowing recovery of future lost profits for a new business); Super Valu Stores, Inc. v. Petersen, 506 So. 2d 317, 326-32 (Ala. 1987) (allowing recovery of lost profits by a grocery store that never opened).

In this case, SMUD's damages generally fall into two categories. First, SMUD seeks the past costs it incurred to procure and construct its on-site dry storage facility. Second, if the Court does not enter an order preserving SMUD's ability to file subsequent actions in this Court, SMUD will seek to recover the additional OM&S costs that it will incur for the dry storage facility during the extended period of the government's breach.

These expenses properly fall into the expectation interest measure of damages; SMUD's proper expectation was that the government's timely performance would have obviated any need to incur these additional expenses for dry storage or for providing storage beyond the time that the SNF would have been removed if the government had timely performed.[1] The alternative for SMUD, which would have been to continue storing 493 spent fuel assemblies in the wet pool during the long period of the government's breach, likely would have caused higher damages

[1] SMUD's expenses for providing a dry storage facility can be thought of constituting at least two particular species of expectation damages – (1) mitigation costs, and/or (2) substitute performance or cover.

and could have posed higher safety risks to the public if the SNF was stored in the wet pool for another 20 or 30 years. Accordingly, if necessary, SMUD will ask the Court to "attempt[] to put [it] in as good a position as [SMUD] would have been in had the contract been performed" by awarding SMUD these additional expenses.

### 2. SMUD's Damages Are Not Barred By Any Purported Rule Against Future Damages In A Partial Breach Case.

Defendant's Motion does not even attempt to demonstrate that SMUD's evidence at trial will be insufficient to recover its damages under the expectation measure described above.[2] Instead, the Motion contends that SMUD's "future" damages are not recoverable as a matter of law because, the Motion says, there is some kind of technical, *per se* rule against the recovery of "future" damages in any partial breach case. The fundamental problem with the government's position is that – as Judge Merow recently recognized – there is no such rule.

The government's attempt to manufacture a hard-and-fast legal rule relies on a patchwork of treatises and cases regarding similar sounding concepts that do not add up to the whole. At the outset, there is neither controlling Federal Circuit law recognizing or applying the "rule" the government urges, nor any persuasive opinions from this Court applying the would-be rule. There is not a single treatise stating that future damages cannot be recovered for a partial breach; the Corbin section relied upon by the government (at 7) has been updated and corrected to

[2] Any such argument should be unavailing at the summary judgment stage. Expectation damages are recoverable where: (1) the damages were reasonably foreseeable to the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty. E.g., Energy Capital Corp., 302 F.3d at 1320; Home Sav. of America, 57 Fed. Cl. at 726. As the Federal Circuit and this Court have repeatedly recognized, each of these issues – foreseeability, causation, and damages – are factual matters that should not be decided on summary judgment if there are disputed facts. E.g., California Fed. Bank v. United States, 245 F.3d 1342, 1350 (Fed. Cir. 2001) (existence and quantum of damages "are factual matters that should not be decided on a motion for summary judgment if material facts are in dispute"); Anchor Sav. Bank v. United States, 59 Fed. Cl. 126, 144 (Ct. Cl. 2003) ("[b]ecause the Federal Circuit has clearly stated that foreseeability is a question of fact, this court would be hard pressed to summarily grant judgment on the issue"); id. at 147 ("[t]he question of causation is a question of fact to be determined at trial"). In the event that the government subsequently raises such an argument, then SMUD should receive an opportunity to submit responsive evidence.

recognize that future damages may be recovered in a partial breach case. And the government has not cited a single case in which any court actually applied the rule the government urges to bar a future damages award in a partial breach case where (as here) it is undisputed that the breach will continue into the future.

Moreover, the reasoning behind the cases the government does cite has no application to the particular and unique facts here (which are not addressed by the government). If the Court does not enter an order preserving SMUD's right to file future claims, the Court should, at the very least, hear and weigh the evidence on SMUD's future damages before adjudicating them.

**a. The Government's Purported Categorical, Doctrinal Rule Against Future Damages In Partial Breach Cases Simply Does Not Exist.**

The basis for the government's generic motion here is the same argument the government recently presented by way of a motion in limine to Judge Merow in the Yankee cases, Case Nos. 98-126, 98-154, 98-474, and Judge Hewitt in the Commonwealth Edison case, Case No. 98-621. The government contended in those cases, as here, that its patchwork of citations supported a legal rule of contract damages that with a partial breach, "plaintiff may only recover for expenditures incurred prior to the filing of the Complaint." Yankee, 2004 WL 1535688, at *1. In other words, the government argues, if the claim is for partial breach, future damages are automatically precluded regardless of whether future non-performance is assured by the breaching party and regardless of whether the future damages would otherwise be recoverable as expectation measure damages.

In the Yankee cases, Judge Merow carefully scrutinized the government's argument and rejected it, finding that none of the government's individual authorities supported it. Judge Merow explained that

> "[h]ere, given defendant's admission that performance will not commence at the earliest until 2010, there is no risk of windfall; there

> is no possibility that future government performance will ameliorate or eliminate expenditures caused by defendant's failure to take actions necessary to commence performance in 1998 and perform through 2010."

Yankee, 2004 WL 1535688, at *2. Judge Merow's thoughtful ruling and analysis in the Yankee cases is correct and we respectfully urge this Court to follow it for several reasons.

First, contrary to the government's contention, the Corbin treatise relied upon by the government expressly recognizes that future damages may be recovered as the result of a partial breach. In its motion, the government inexplicably cites to the main volume of Corbin without mentioning the supplement. See Defendant's Motion at 7. The main volume did say that "[i]t *has been thought* that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ – that he must treat the breach as only 'partial.'" 9 A. Corbin, Corbin on Contracts § 956 (emphasis added). But the supplement corrects that misconception: "A breach can cause future damages and still be only partial. It is not true that future damages are inconsistent with a partial breach." 9 J. Murray, Corbin on Contracts § 956, at 550-51 (interim ed. supp. 2003). That section also acknowledges that, under the proper circumstances, an injured party suing for partial breach may be entitled to seek future performance under the contract and future damages. "A partial breach should be subject to both injunctive and future damages remedies in the proper case, because neither one may offer a complete cure alone." Id.; accord Yankee, 2004 WL 1535688, at *1. SMUD respectfully submits that, if necessary, the evidence at trial will show that this is a "proper case" for such future damages.[3]

---

[3] Moreover, even if Corbin had not been corrected in the supplement, as Judge Merow noted in the Yankee opinion, the cases cited for the idea that it "had been thought" that future damages were unavailable are neither controlling nor persuasive here. Judge Merow noted that here, unlike the nineteenth century Massachusetts cases, Fay v. Guyuon, 131 Mass. 31 (1881) and Powers v. Ware, 21 Mass. (4 Pick.) 106 (1826), "the breach is established and

Footnote continued on next page

Second, the Restatement of Contracts sections cited by the government (at 4-7) – which distinguish a partial breach from a total breach and permit a plaintiff to maintain an action for partial breach – say nothing about precluding a plaintiff from maintaining an action for damages through the period the evidence shows the breach will continue. SMUD does not dispute that its current claim is for partial breach. Besides defining the different kinds of breaches, the implication the government seeks to create by citing various sections of the Restatement of Contracts and Corbin is that they only permit recovery of partial breach damages through "the date of the writ." But there is nothing in the Restatement or Corbin that supports that implication. The permissive language of the Restatement (Second) of Contracts allows the plaintiff to *choose* whether to declare a total breach or sue for the partial injury. RESTATEMENT (SECOND) OF CONTRACTS § 236(1); id. cmt. b.

There is no language or implication in those sections that would prevent a plaintiff from seeking damages for continued non-performance through the date that the evidence shows – or, as here, it is undisputed – that the breach will continue. Indeed, the language of Corbin permits (but does not require) a plaintiff to "sue for the partial injury" or declare a series of "partial breaches" (Corbin §§ 946, 956); there is no reason, given appropriate evidence – or, as here, admission by the government – that the plaintiff may not elect to seek damages through the date the evidence shows the breach will continue. Accord Yankee, 2004 WL 1535688, at *3.

Third, the Restatement of Judgments sections cited by the government (at 6-8) – which permit a plaintiff to maintain a subsequent action for a later partial breach – do not purport to preclude a plaintiff from claiming in the first action damages through the period the evidence

Footnote continued from previous page
defendant admits that it will not commence performance until 2010." Yankee, 2004 WL 1535688, at *1 n.2. Thus, Fay and Powers are inapposite.

shows the breach will continue. Comment g to Section 26 does contain language which provides superficial support to the government's argument (at 7) that the non-breaching party "is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and *the judgment does not preclude a further action* by him for a breach occurring after that date." RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. g (1982) (emphasis added). But while the government has emphasized the "up to the time of the institution of the action" language in its brief, it is clear from the context and purpose of Section 26 that the drafter's emphasis – indeed, the entire point of the section – is on the "*does not preclude a further action*" language. That is, Section 26 of the Restatement (Second) of Judgments has nothing to do with limitations on damages measures in contracts cases; the drafters explain that "[t]his Section presents a set of exceptional cases in which, after judgment that would otherwise extinguish the claim under the rules of merger or bar (see §§ 18, 19), the plaintiff is nevertheless free to maintain a second action on the same claim or part of it." RESTATEMENT (SECOND) OF JUDGMENTS § 26.

Simply put, the permissive language in comment g to Section 26 focuses on the effect of a prior judgment (it is, after all, in the Restatement of Judgments) and in no way purports to limit the contract damages the plaintiff may seek in the first action, which is covered by the expectation measure. Moreover, the Restatement of Judgment's prohibition on claim splitting in a total breach case has no bearing on the period through which a plaintiff may obtain damages in a partial breach case.

Fourth, the government has not cited a *single* case in any jurisdiction in which a Court actually applied the rule urged by the government to bar future damages in a partial breach case where there was evidence of a breach continuing into the future. The government has cited (at 8, 10) to Judge Hodges' opinion in the Indiana Michigan case, but as Judge Merow recognized in

the Yankee cases, "the court's statement that future damages were not available in a claim for partial breach of contract . . . was dicta" because "the court found that costs were incurred for reasons other than DOE's announced inability to commence performance." Yankee, 2004 WL 1535688, at *1. Indeed, Judge Hodges' Indiana Michigan decision was rendered after he heard all of the evidence offered by the plaintiff at a full trial (over the government's similar "future damages" objection made before trial), and contains a series of factual findings – which the government has not discussed – that plainly distinguish it from SMUD's claims here.[4]

With no controlling authority, the government must instead rely upon a smattering of older cases from far flung jurisdictions. None of them actually recognized any ironclad rule or held that future damages could not be recovered in a partial breach case no matter the evidence:

- The opinion in Kaiser v. Northwest Shopping Ctr., 587 S.W.2d 454 (Tex. Civ. Ct. 1979) (cited by the government at 7, 9) said nothing about any limitations on contract damages, in the partial breach context or otherwise. The only issue was whether a prior suit on a breach of the same contract was res judicata for the current lawsuit. Id. at 458.

- The government's citation to Coughlin v. Blair, 262 P.2d 305, 312 (Cal. 1953) (cited at 7-8), a fifty year old case from California, does not support the rule the government urges because Coughlin was a total breach case. The issues in the case included whether the plaintiff, after declaring a total breach, had improperly recovered the total decrease in value of the land even though partial performance had been rendered. Id. at 313. No "future" damages were barred in Coughlin.

- The decision in Quick v. Am. & Pump Co., 397 F.2d 561 (2d Cir. 1968) (cited at 8) also does not support the government's argument. Based on the particular facts of an employment dispute, the Quick court addressed whether periodic retirement payments due to a former company executive would be accelerated, and the Court's complete discussion and analysis was as follows: "It will suffice to say that we see no reason not to apply the usual rule that contracts to pay money in installments are breached one

[4] For the reasons discussed in this brief, SMUD respectfully submits that Judge Hodges' dicta was wrongly stated, and urges this Court not to follow it. Moreover, there are key factual distinctions between the evidence presented in Indiana Michigan and the evidence SMUD would present that render the cases incomparable on this issue. For example, in Indiana Michigan, Judge Hodges found that the plaintiff's future damages would arise from the future construction of a dry storage facility and that the plaintiff had not proven that such facility would be needed. See Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 641, 660-61 (2004). In contrast, SMUD has already constructed its dry storage facility, and there should be no dispute that the government's breach of contract will require SMUD to store SNF for at least an additional 12 years.

installment at a time." Id. (citations omitted). There was no discussion of a partial versus total breach and certainly no holding or even dicta that future damages are never available in a partial breach case.

- Neither Keefe Co. v. Americable Int'l, Inc., 755 A.2d 469, 472 (D.C. Ct. App. 2000) nor San Carlos Irrigation & Drainage Dist. v. United States, 23 Cl. Ct. 276, 282 (1991) (cited at 8, 9) involved damages issues at all. The only question in those cases was at what time partial contract breach claims accrued for statute of limitations purposes; the courts held that, given the plaintiff's ability to choose to sue on a partial breach, individual claims accrued as the breaches occurred.

The government has not cited any other cases or other authority for the rule it urges. The treatises and the cases do not support the rule the government hopes for, and the Court should reject the government's attempt to artificially limit the scope of SMUD's damages claims in derogation of the expectation measure and common sense. As Judge Merow concluded in the Yankee cases:

> "Given the nature of the breach here, as well as the suggested magnitude of measures taken to store the waste that defendant was required by contract and statute to accept, to limit any recovery in this action to expenditures either to the date of the filing of the Complaint or the date of trial may well not adequately compensate plaintiffs and restore them to the position they would have been in but for the breach."

Yankee, 2004 WL 1535688, at *3.

**b. Any Purported Rationale For Limiting Future Damages Is Inapplicable Here And In Fact Favors the Opposite Result.**

Apart from the fact there is no iron-clad rule of the sort the government advocates, there is also no policy rationale for such a result in this case. The dicta in the Coughlin case cited by the government identifies that a potential rationale for limiting future damages is to prevent a double recovery by the plaintiff assuming the defendant performs its contractual obligations in the future. 41 Cal. 2d at 597-98.

Here, however, there is no serious prospect of double recovery. First, as Judge Merow recognized, there is no danger of such a double recovery for damages incurred up to 2010

because it is undisputed that the DOE will not perform before that date. With respect to damages that SMUD would seek during the period after 2010, SMUD's evidence at trial would show that there is no serious prospect of double recovery for those damages either. But more fundamentally, this is not a summary judgment issue: this is not a legal issue that would justify judgment as a matter of law in the sterile abstract way proposed by the government in its motion. Rather, concerns of double recovery are a factual question that can only be answered in the context of the damages evidence that SMUD would present at trial if necessary.

The question raised by the government's motion is whether there should be some arbitrary, artificial limit on the breach period which the evidence can show in a particular lawsuit – i.e., only through the date of the filing of the complaint or through trial. The answer required by the goal of the expectation measure is a simple "no." If, as here, the evidence shows that non-performance will continue for a certain future period, there is no reason to prevent recovery based on that proof at a single trial.

If the Court is willing to grant the order requested in Plaintiff's Motion, insuring that SMUD will be able to bring subsequent actions to recover subsequent OM&S costs resulting from the breach, SMUD is willing to streamline the case and forego seeking future damages here. If Plaintiff's Motion is not granted, however, SMUD respectfully asks the Court to deny the government's request for partial summary judgment regarding future damages.

**B. <u>SMUD is Entitled to Recover Past Damages Incurred Through the Time of Trial.</u>**

The Defendant's Motion also argues (at 8-9) that SMUD is entitled to recover only those damages it incurred through the date this lawsuit was filed – June 9, 1998 -- because SMUD has sued for partial breach of contract. This argument is contrary to precedent and without merit.

The Federal Circuit has held that under the "general principles of the law of damages … a recovery for past damages ordinarily includes not only those damages that the plaintiff incurred

before the filing of the complaint, but also any damages that the plaintiff incurs up to the time of trial." McAllister v. Sec'y of Health & Human Servs., 70 F.3d 1240, 1243 (Fed. Cir. 1995). This rule is fully applicable to cases involving partial breach of contract, as evidenced by the recent decisions of this Court in the Yankee, Tennessee Valley Authority, and Indiana Michigan cases. In each of these cases, this Court rejected the government's argument that the plaintiff's damages should be limited to those incurred prior to the filing of the complaint. See Yankee, 2004 WL 1535688, at *3 (holding that the plaintiff could claim damages up to 2010); Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 678 (2004) ("TVA") (holding that the plaintiff could claim damages through the end of its most recently completed fiscal year before trial);[5] Indiana Michigan, 60 Fed. Cl. at 642 (citing authority for the view that, in an action for partial breach of a contract, a party may recover damages up to the time of trial).

The government does not cite, and SMUD has not found, any decision by the Federal Circuit or this Court limiting the application of this rule in partial breach cases or prohibiting the plaintiff in such a case from recovering the damages it has incurred through trial. The handful of cases and treatises that the government does cite apply no such limitation or prohibition and are distinguished above.

The government's reliance on Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) and Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989) is particularly misplaced. These cases merely stand for the general proposition that a plaintiff cannot create federal jurisdiction based on post-filing conduct where that jurisdiction did not exist when the suit was filed. See Lujan, 504 U.S. at 571 n.4; Newman-Green, 490 U.S. at 830. The government does not (and cannot) contest this Court's jurisdiction over SMUD's claims in this case. Furthermore, this

[5] On August 12, 2004, Judge Lettow denied the government's motion for reconsideration in TVA. See Order of August 12, 2004 (attached as Exhibit 1).

Court and other federal courts repeatedly have held that once a court has "obtained jurisdiction of the persons and subject matter of a suit, [it] retains such jurisdiction for all purposes including the awarding of all damages *accruing up to the date of judgment*." Calhoun v. United States, 354 F.2d 337, 339 (Ct. Cl. 1965) (emphasis added); Gila River Pima-Maricopa Indian Cmty v. United States, 140 F. Supp. 776, 779 (Ct. Cl. 1956); see also Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 526 (10th Cir. 1987); Rea v. Ford Motor Co., 560 F.2d 554, 557 (3d Cir. 1977).

Furthermore, to limit SMUD's recovery to the damages it incurred through the filing of this lawsuit in 1998 would be both wasteful and unjust. In the six years since this case was filed, SMUD has spent more than $50 million dollars developing dry storage as a result of the government's breach. The government has already conducted extensive discovery regarding those damages, making them the subject of more than 75 interrogatories and document requests and seven depositions to date. At the government's request, SMUD has produced data on its damages through 2003 in an accessible electronic format, and the government recently obtained an extension of fact discovery that enables it to further investigate these damages. See Defendant's Motion for Enlargement of Time to Complete Fact Discovery and For Clarification or Modification of March 23, 2004 Scheduling Order, dated June 14, 2003; Plaintiff's Response to Defendant's Motion for Enlargement of Time to Complete Fact Discovery, dated July 1, 2004. Thus, the determination of these damages at trial should impose no hardship on the government.

In contrast, excluding these up-to-six-year-old damages from trial would force SMUD to file a new action to recover them. This would simply add to the Court's docket, increase the parties' legal expenses and, because of the unavailability of prejudgment interest, diminish the value of SMUD's recovery. Such a result would be directly contrary to the directive in the Corbin Treatise, not cited by the government, that the doctrine of claim splitting seeks to satisfy the needs of the plaintiff "at the least expense" and avoid additional actions that "would be

unnecessary and vexatious and unjust." 9 A. Corbin, Corbin on Contracts § 955; see also TVA, 60 Fed. Cl. at 678 n.16 (allowing plaintiff to recover damages incurred through most recent fiscal year before trial makes "presentation and analysis of evidence more convenient and efficient for the parties and the Court without inflicting hardship on either party").

SMUD therefore respectfully asks the Court to deny the government's request for partial summary judgment regarding past damages incurred after the filing of the complaint.

## **Conclusion**

For the reasons set forth above, Defendant's Motion should be denied in its entirety. Notwithstanding Plaintiff's right to present evidence of its future damages, Plaintiff respectfully renews its request of July 8, 2004 for an Order allowing Plaintiff to bring subsequent actions before this Court to recover damages accruing in the future as a result of Defendant's breach of contract.

DATED this 16th day of August, 2004.

Respectfully submitted,

s/ Howard Cayne by s/ Timothy R. Macdonald
Howard Cayne
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5899
Counsel of Record for
Plaintiff Sacramento Municipal Utility District

Of Counsel:
David S. Neslin
Timothy R. Macdonald
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
(303) 863-1000

CERTIFICATE OF FILING

I certify that I caused a copy of the foregoing Plaintiff's Response to Defendant's Motion for Partial Summary Judgment regarding Plaintiff's Recovery of Future or Prospective Damages to be filed electronically through the Court of Federal Claims Case Management / Electronic Case Filing System on August 16, 2004. I understand that all parties may access the filing through the Court's CM/ECF System, including:

Harold D. Lester, Jr.
Russell A. Shultis
Commercial Litigation Branch, Civil Division
Attention: Classification Unit, 8th Floor
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/ Timothy R. Macdonald