IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.98-488C<br>(Judge Braden) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S RECOVERY OF FUTURE OR PROSPECTIVE DAMAGES

Defendant, the United States, respectfully submits this reply to "Plaintiff's Response to Defendant's Motion For Partial Summary Judgment Regarding Plaintiff's Recovery of Future Or Prospective Damages," which plaintiff, Sacramento Municipal Utility District ("SMUD"), filed with the Court on August 16, 2004.[1]

## ARGUMENT

### I. ALL APPLICABLE COURT DECISIONS SUPPORT THE CONCLUSION THAT FUTURE DAMAGES CANNOT BE AWARDED UPON A PARTIAL BREACH OF CONTRACT CLAIM

#### A. SMUD Has Not Identified A Single Case In Which A Court Awarded A Plaintiff Future Damages In Response To A Partial Breach Claim

In response to the Government's motion for partial summary judgment regarding SMUD's ability to recover future or prospective damages, SMUD argues that, if the Court declines to enter an order preserving SMUD's ability to bring subsequent actions in this Court, SMUD will seek to recover "the additional [operations, maintenance and storage] costs that it

[1] Although the Government is filing this reply to comport with the deadline for filing, the parties are currently in the process of negotiating a stipulation regarding this matter which we hope to file with the Court shortly.

will incur for the dry facility during the extended period of the government's breach." Pl. Resp. at 4, 12. Although SMUD engages in great efforts attempting to distinguish the cases that we cited in our motion for partial summary judgment from the situation at hand, SMUD has not cited a single case in which a court actually has awarded future or prospective damages through an indefinite period – not yet incurred or obligated – to a plaintiff in response to a partial breach claim. In fact, without suggesting that its request is unprecedented and unsupported by any case law involving partial breach claims, SMUD simply asserts that, if the Court declines to preserve SMUD's ability to pursue future actions and seek damages up to the date of trial in this case, the Court should issue a decision in direct conflict with every other court that has considered this issue. SMUD has identified absolutely no basis for this Court to disagree with the treatises and case precedent, including decisions of this Court, that we discussed in our motion for partial summary judgment.

The only support that SMUD cites in response to our demonstration that damages for future partial breaches are not available to a claimant in a partial breach case is the Court's decision in Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) (unpublished), and a sentence from a supplement to the Corbin on Contracts treatise. Pl. Resp. at 7 (quoting 9 J. Murray, Corbin on Contracts § 956, at 550-51 (interim ed. 2003 Fall Cumulative Supp. 2003)). However, neither of these sources support SMUD's assertion that, in a partial breach context, it is entitled to pursue damages in its current case for future partial breaches through some indefinite period of time in the future.

First, SMUD's reliance upon the Court's decision in Yankee Atomic as somehow allowing a plaintiff to recover future damages through some indefinite period of time is

misplaced. In Yankee Atomic, the Court allowed evidence at trial of damages that could be incurred through 2010. However, the Court's decision was predicated upon four separate assumptions, none of which are true in this case. First, the Court based its decision, in part, upon its understanding that the Government did not suggest that the plaintiffs' costs from the time of trial through 2010 could be recovered in a subsequent action if DOE performs in 2010. 2004 WL 1535688, at *2. Second, the Court predicated its decision on the fact that the plaintiffs in that case were not seeking to recover damages that may be incurred if DOE did not commence performance until after 2010. Id. Third, the Court based its decision upon the fact that the plaintiffs were potentially seeking damages under a restitution theory, which would result in a total rather than partial breach and, therefore, potentially allowed for the recovery of future damages. Id. Finally, the Court noted that the limitation of damages to the date of the complaint or the date of trial potentially would not adequately compensate the plaintiffs and restore them to the position they would have been in but for the breach. Id. at 3.

In this case, none of these assumptions or limitations are present. First, the Government agrees that, consistent with the statute of limitations, SMUD may bring future actions for future breaches, regardless of whether DOE performs by 2010. Second, SMUD has unequivocally stated that it is seeking damages past 2010. Pl. Resp. at 12 ("[w]ith respect to damages that SMUD would seek during the period after 2010, SMUD's evidence at trial would show that there is no serious prospect of double recovery for those damages either."). Consequently, even if the Court were to accept the Court's reasoning in Yankee Atomic, that reasoning has no application where, as here, SMUD is seeking damages through some undefined time in the future.

Further, there is absolutely no reference in SMUD's complaint to seeking restitution as an alternative basis for recovery. Absent a restitution claim and, consequently, a total breach claim, SMUD has no right to seek future damages for future breaches through some indefinite period of time. Finally, SMUD has failed to identify how it would be prejudiced or not be made whole by being limited to seeking damages for breaches that have already occurred, particularly given the Government's agreement that SMUD may, consistent with the statute of limitations, bring future actions for future breaches. Therefore, SMUD's reliance on the Court's decision in Yankee Atomic as somehow allowing for the recovery of future damages through some indefinite period of time is misplaced.

Second, in the Corbin supplement, the author, Professor Murray, discusses a decision from the California Court of Appeal, Guntert v. City of Stockton, 55 Cal. App. 3d 131, 126 Cal. Rptr. 690 (1976), in which the California court reversed an award of future damages for a partial breach of contract. In response to a partial breach of a lease contract, the trial court, in addition to ordering previously incurred damages and an injunction for specific performance, had ordered the defendant to pay a particular sum of money each month from the date of the trial court judgment through the identified end date of the lease, "unless the lease ended earlier." Id. at 150, 126 Cal. Rptr. at 701. The appellate court recognized, however, that, "[i]f the breach is partial only, the injured party may recover damages for non-performance only to the time of trial and may not recover damages for anticipated future nonperformance." Id. at 150-51, 126 Cal. Rptr. at 702 (quoting Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953)). The Guntert court determined that an injunction requiring specific performance of the contract would

absolutely preclude the contract holder from incurring any damages and that, therefore, an award of lost future profits and entry of an injunction would be inconsistent:

> Here plaintiffs elected to remain in possession, continue to pay rent and sue for a partial rather than total breach. The lease, whose prime objective was the letting of property, remained alive; the law's remedies were substituted for only a part of the injured party's election, the breach was partial and not total. That election was confirmed by the injunction issued at the tenant's behest. That injunction prevented the landlord from interfering with the tenant's quiet possession and use of the leased premises during the remainder of the tenancy.
>
> By granting an injunction which assured specific performance and, in addition, a judgment for future profits available only on the theory of a total breach of the lease, the trial court awarded something akin to double recovery. Plaintiffs occupy an inconsistent position – they argue (correctly) that their right to damages was not dependent upon eviction, yet they seek a measure of damages available to an evicted tenant, that is, one who no longer has a lease. The breach being only partial, the trial court erred by awarding prospective loss of profits.

Id. at 151, 126 Cal. Rptr. at 702. Nevertheless, the Guntert court found that "[t]he unavailability of prospective damages does not preclude future awards of past damages flowing from the partial breach" and that "[p]laintiffs may, within the period of limitations, file a new lawsuit seeking additional damages." Id. at 153, 126 Cal. Rptr. at 703.

Professor Murray discusses the Guntert case and describes it as holding that "it would be a double recovery to allow both an injunction to protect against future harm and also to allow damages for future harm." 9 J. Murray, supra, § 956, at 550. Based upon that description, he states that, "[a]ctually, the result here is not sound," that "[i]t is not true that damages to be suffered in the future are always prevented by an injunction," and that "[a]n injunction may lessen or prevent a particular kind or item of damage without preventing another one." Id. at

550-51. Professor Murray then states that "[a] partial breach should be subject to both injunctive and future damage remedies in a proper case, because neither one may offer a complete cure alone." Id. at 551. Finally, in discussing the result in Guntert, he states that "a good example of this is First Nat'l State Bank of N.J. v. Commonwealth Fed. Sav. & Loan Ass'n, 610 F.2d 164 (3d Cir. 1979), where both specific performance and damages were awarded." Id.

Although Professor Murray's discussion of the Guntert case is somewhat confusing, it appears that he is contesting the Guntert court's finding that an injunction should preclude the existence of any future damages, rather than the means by and manner in which future damages are awarded. Because the United States Court of Appeals for the District of Columbia Circuit has expressly declined to order specific performance by the Department of Energy, see Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 759 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), the issue of whether specific performance would eliminate SMUD's future damages is not before this Court.

The issue here is whether it is appropriate to preclude, at the present time, an award of damages that might be caused by future partial breaches, but to allow the plaintiff to return to court if and when future partial breaches cause it to incur damages. In the Corbin on Contracts treatise, Professor Corbin expressly and unambiguously states that, in a partial breach claim, "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ – that he must treat the breach as only 'partial.'" 9 A. Corbin, Corbin on Contracts § 956, at 747 (interim ed. 1979) (emphasis added). Plainly, the long-standing rule is that a plaintiff claiming a partial breach may only recover damages "to the date of the writ," id., and Professor Murray, in his supplement, certainly cannot intend to disagree

with that long-standing principle. To the extent that he has intended to contradict that long-standing rule, he has cited absolutely no authority to support that new theory.[1]

In any event, Professor Murray, in his supplement to the Corbin treatise, did not discuss or acknowledge the Guntert court's second basis for declining to award future damages for a partial breach: that "[t]he award of prospective profits accruing [more than five years after the date of judgment] offends another tenet of damage law – the requirement of reasonable certainty . . . ." Guntert, 55 Cal. App. 3d at 152, 126 Cal. Rptr. at 703. The trial court in Guntert "indulged in a shaky prognostication – that [the plaintiff's] plant could not be reopened or profitably utilized within the remaining years of tenancy." Id. As the appellate court found, the plaintiff "alone had made the decision to close down the plant," and the trial court viewed this decision "as an expression of economic prudence dictated by prevailing uncertainties over outcome of the lawsuit." Id. "Although the trial court found that plant closure was a natural foreseeable consequence of the breach, it did not find that reopening the plant would be uneconomical or unfeasible." Id. at 153, 126 Cal. Rptr. at 703. As the appellate court found, this uncertainty in the fact of damage, or the manner in which damages would accrue in the future based upon the plaintiff's future business decisions, also precluded an award of future damages:

---

[1] Although Professor Murray cites to the Third Circuit's decision in First National State Bank to support his assertion that specific performance and damages are not incompatible, the First National case did not involve an award of any future damages. To the contrary, the court in First National affirmed the trial court's award of "damages incidental to the breach covering reimbursement for interest and for losses sustained in operating the mall:" that is, "to reimburse with interest the amount First National has lost," in the past, "in operating the mall." First Nat'l, 610 F.2d at 169 & 174 (emphasis added). Although the court affirmed the trial court's order that the defendant "pay interest at eight percent on the amount of the loan from the time the loan should have been made until such time as the money is turned over to First National," id. at 169, neither the trial nor appellate courts made an award of future damages of costs yet to be incurred.

> A claim for future damage may be maintained despite uncertainty of amount; it may not be maintained in the face of uncertainty as to its occurrence; a mere contingency will not support a claim for damages.

Id. (emphasis added). The appellate court in Guntert determined that "[t]hese two rules – one denying prospective damages for partial breach, the other denying contingent future damages – combine to invalidate that portion of the [trial court] judgment awarding monthly 'lost profits' commencing February 1974." Id.

In its opposition to our arguments that future damages may not be awarded for a partial breach or for future partial breaches that have occurred after the date of the complaint or, in the alternative, the date of trial, SMUD has not cited to a single court decision in which future damages were awarded in response to a partial breach claim. SMUD is asking the Court to disregard all existing case precedent regarding partial breach damages claims and award it an indefinite number of years' worth of future damages. SMUD has identified no valid basis for this request and no precedent for this type of award.

B. Courts Have Precluded An Award Of Future Damages In Response To A Partial Breach Claim

As established in our motion for partial summary judgment, courts have uniformly held that a plaintiff seeking damages for a partial breach cannot recover future damages, but, instead, must seek any damages incurred in the future in response to continuing partial breaches after they have been incurred. In our motion for partial summary judgment, we identified several of those court decisions, including this Court's decision in Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004), appeal pending, Nos. 04-5122 & -5139 (Fed. Cir.), in which this Court expressly held that "[d]amages for partial breach of contract are measured by costs incurred

between the breach and the date of trial," id. at 648 (citing Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953)), and that, "[w]hen [plaintiff] can show that it has incurred costs related to defendant's breach, plaintiff may have causes of action that are not speculative" and may elect to "maintain a second suit in case a further breach occurs." Id. at 664 (quoting 9 A. Corbin, supra, § 946, at 720)); see Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 678 (2004) (finding in spent nuclear fuel case that, pursuant to Restatement (Second) of Judgments § 26(1)(b) & (e), plaintiff cannot recover future damages for partial breach).

## II. IN SEEKING FUTURE DAMAGES, SMUD IS ASKING THIS COURT TO CONFLICT WITH THE *RESTATEMENT*, DESPITE THE ABSENCE OF ANY AUTHORITY IN SUPPORT OF ITS DAMAGES REQUEST

In its response brief, SMUD not only fails to cite a single court decision that supports its request for future damages, it asks this Court to issue a decision that would directly conflict with the rules set forth in the Restatement (Second) of Judgments and the Restatement (Second) of Contracts. As we explained in our motion for partial summary judgment, the United States Court of Appeals for the Federal Circuit has repeatedly relied upon the Restatement (Second) of Judgments as an authoritative source. See, e.g., Christopher Village, L.P. v. United States, 360 F.3d 1319 (Fed. Cir. 2004) (citing repeatedly to Restatement (Second) of Judgments); Ammex, Inc. v. United States, 334 F.3d 1052, 1056 (Fed. Cir. 2003) (recognizing that court is broadly guided by the Restatement (Second) of Judgments); Young Engineers, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983) ("[i]n our analysis we will be guided by the Restatement (Second) of Judgments (1982) . . . ."). Further, the Federal Circuit recently held that "[t]he Restatement of Contracts is recognized as an appropriate source of authority in contract

cases." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1308 n.9 (Fed. Cir. 2004) (citing Mobil Oil Exploration v. United States, 530 U.S. 604, 608 (2000)).

As we discussed in our motion for partial summary judgment, the Restatement (Second) of Judgments explains that, if a non-breaching party elects to treat a breach of contract as a total breach, "and the plaintiff thereafter commences an action for damages, he is obliged in order to avoid 'splitting,' to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract." Restatement (Second) of Judgments § 26 cmt. g, at 240 (1982) (emphasis added). "In the event of a 'material' breach (see Restatement, Second, Contracts § 241) that is not accompanied or followed by a repudiation, the plaintiff is entitled to treat the contract as at an end and to recover damages for performances not yet due as well as those already due on the theory that there has been a total breach of contract." Restatement (Second) of Judgments § 26 cmt. g, at 240-41 (1982). "If a plaintiff does this, a judgment extinguishing the claim under the rules of merger or bar precludes another action by him for further recovery on the contract." Id. at 241. Accordingly, pursuant to the Restatement (Second) of Judgments, if a plaintiff seeks damages for a total breach of contract, he must seek to recover all damages that he has or will incur as a result of the total breach, given that the parties' obligations to continue contract performance are terminated and a judgment for the non-breaching party will conclude all obligations under the breached contract. See Restatement (Second) of Contracts § 236(1), at 214 (1981) ("[a] claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance").

However, the Restatement (Second) of Judgments further explains that, even if a "breach is material, the plaintiff may elect to treat it as being merely a partial breach," id., as SMUD did in this case. If the non-breaching party elects to treat a breach as a partial breach, "he is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and the judgment does not preclude a further action by him for a breach occurring after that date." Restatement (Second) of Judgments § 26 cmt. g, at 241 (1982) (emphasis added); see Restatement (Second) of Contracts § 236 cmt. b, at 214 (1981) (discussing "partial breach"). In its response brief, SMUD's only reference to the authority of the Restatement (Second) of Judgments is by stating that the Restatement comment deals only with the preclusive effect of a prior judgment and "has nothing to do with limitations on damages measures in contracts cases." Pl. Resp. at 9. Unfortunately, SMUD's interpretation of the Restatement comment is wholly unrelated to the actual language of the comment. By asking this Court to allow SMUD to recover future or prospective damages in response to a partial breach, it is asking this Court to issue a decision in direct conflict with the Restatement (Second) of Judgments, without citing a single court decision that supports its requested relief.

Indeed, the Government's position is entirely consistent with this Court recently issued decision in Tennessee Valley Authority v. United States, 60 Fed. Cl. 665 (2004), in which the Court, like the Court in Indiana Michigan, precluded an award of future damages for partial breaches that had not yet occurred, relying upon the Restatement (Second) of Judgments as the basis for its decision. In TVA, the Court followed section 26(1)(b) and (e) of the Restatement (Second) of Judgments. See TVA, 60 Fed. Cl. at 677-78. Section 26(1)(e) of the Restatement provides as follows:

> For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to date of suit, and chooses the latter course . . . .

Restatement (Second) of Judgments § 26(1)(e) (1982) (emphasis added). Comment g to section 26 of the Restatement, which we have discussed extensively above, provides the explanation and rationale for the rule identified in section 26(1)(e) as it applies to contractual breaches. Accordingly, the Court in TVA expressly adopted the rationale of the Restatement (Second) of Judgments in finding that TVA could not recover future damages in a partial breach case.

## III. SMUD'S SUGGESTION THAT IT SHOULD RECOVER FUTURE DAMAGES WOULD CREATE A NEW LEGAL DOCTRINE OF "ANTICIPATORY PARTIAL BREACH," WHICH OTHERWISE DOES NOT EXIST

By seeking damages now for future partial breaches that have not yet occurred, SMUD is actually anticipating that the Department of Energy will commit additional partial breaches of the Standard Contract in the future. The fact that SMUD cannot seek future damages for future partial breaches of the Standard Contract is supported by the absence of a legal remedy for an anticipatory partial breach. Indeed, "an anticipatory breach cannot be predicated on a partial breach of the contract." City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) (emphasis added); see 9 A. Corbin, supra, § 972, at 798 ("there seems to be no authority for saying that, for such a partial anticipatory repudiation, an action for damages can be at once maintained"). To the contrary, an anticipatory repudiation gives rise only to a claim for total breach that concludes the parties' further performance obligations. See Restatement (Second) of Contracts § 253 cmt. b, at 287 (1981) ("a breach by repudiation alone can only give rise to a claim for total breach . . .," effectively ending any further performance

obligations by the contracting parties). This Court has recently recognized that "[a]nticipatory repudiation does not apply in a partial breach situation." Indiana Michigan, 60 Fed. Cl. at 648. Accordingly, SMUD, having elected not to seek damages for a total breach of contract and to continue to seek performance under the Standard Contract, cannot anticipate partial breaches of the Standard Contract that may occur in the future or seek damages at this time for partial breaches of the Standard Contract that may occur in the future.

Moreover, SMUD cannot rely upon the doctrine of anticipatory repudiation within the context of a continuing contract, as the two concepts are mutually exclusive. Here, SMUD seeks to assert an anticipatory repudiation of the contract while simultaneously seeking continued performance. As set forth above, an anticipatory breach cannot be predicated upon a partial breach of contract. See, e.g., Indiana Michigan, 60 Fed. Cl. at 648; City of Fairfax, Va., 582 F.2d at 1331; 9 A. Corbin, supra, § 972, at 798; Restatement (Second) of Contracts § 253 cmt. b, at 287 (1981). An anticipatory repudiation by one party – and the declaration of an anticipatory breach by the other – terminates all obligations under the contract as a matter of law. As a result, because SMUD seeks continued performance into the future, there can be no repudiation and anticipatory breach.[2]

---

[2] Public policy supports the incompatibility of an anticipatory repudiation within a partial breach claim. The election of remedies doctrine – that is, the election to assert an anticipatory breach or await the date of performance and assert a total or partial breach – and the limitations imposed by each course of action establish definitive dates from which damages are litigated. Cf. Hall v. Allstate Ins. Co., 880 F.2d 394, 399 (11th Cir. 1989) (recognizing that, under elections of remedies doctrine, plaintiff has the choice of either asserting anticipatory repudiation or suing at the time of performance). A party either elects to litigate anticipatory breach remedies from the date of the anticipatory breach, which constitutes an election to view the contract as totally breached, or elects to litigate breach remedies from the actual due date for contract performance. In a breach case, as we have here, by focusing upon dates certain, courts eliminate significant potential litigation concerning pre-breach conduct by both parties (for example,

SMUD's assertion that there is "no serious prospect" of a double recovery is incorrect. Pl. Resp. at 11. If the Court grants SMUD an award of future damages, which SMUD alleges it most probably will incur, SMUD will have a minimum "baseline" of monies that it may retain. If, at some point in time, it becomes apparent that SMUD did not need the amount of money that the Court awarded to continue storage operations, SMUD will not return that money to the Federal Government, but will keep it. However, if SMUD incurs additional costs beyond those that the Court awards, SMUD, apparently, will seek to recover those additional costs from the Government. In SMUD's view, an award of future damages is a no-lose situation, at least for SMUD. If the Court awards future damages that exceed SMUD's eventual costs, SMUD wins because it has obtained additional monies than the costs that it actually incurred. If the Court awards future damages that fail to cover SMUD's future costs, SMUD apparently will simply return to the Court and ask for more. SMUD offers no precedent for this type of request for relief.

Further, SMUD asserts that our suggestion that the Court, as a matter of law, should not award future damages in a partial breach situation lacks a policy rationale. Pl. Resp. at 11. Yet, it is SMUD's approach – constant discovery about when future events might occur and constant evaluations and decisions regarding the likelihood of future activities and their timing – that is lacking in any rational policy. By establishing an "iron-clad rule," as SMUD describes it, limiting damages awards in a partial breach situation to those incurred as of the date of the

statements by the breaching party alleged to constitute an anticipatory repudiation of contract, never declared as such by the non-breaching party at the time the statements were made, or an alleged failure by the non-breaching party to mitigate damages prior to the breach) that would significantly and unnecessarily complicate contract litigation and would render unclear the elections regarding continuing contract performance that the parties were making.

complaint's filing or, at the very latest, by the date of trial, the Court eliminates the need for expensive and time-consuming discovery into future events, current activities designed to precipitate future events, and current program deliberations about policy decisions that might affect future events. In fact, under SMUD’s theory, SNF plaintiffs would constantly be taking discovery of individuals responsible for the development of and for decisions about the Yucca Mountain repository, potentially micro-analyzing every effort that they take in an effort to support arguments about increased future damages that the Court allegedly ought to award and precluding those individuals from focusing upon the work upon which they need to be focused: the completion of the Yucca Mountain facility.

Conversely, a legal rule that allows plaintiffs to recover, in a partial breach situation, only those costs that have been incurred creates a situation in which the need for discovery would be extensively reduced and narrowed. Instead of having to engage in repetitive extensive discovery about the Department of Energy's program, about what might happen, and about when it might happen, as SMUD's request for recovery of some but not all future damages would repeatedly require, discovery in response to a damages claim that seeks only the recovery of actual incurred costs could be limited to an analysis of whether the costs at issue were actually incurred, whether those costs would have been incurred even without the partial breach, whether the need for the cost incurrence was "caused" by the partial breach, and whether the plaintiff has adequate support for the incurred costs. There would be little or no need for repeated discovery of Department of Energy employees to learn their current thinking about when the Department of Energy will be able to begin SNF acceptance and the schedule for that acceptance. Instead, damages will be

litigated as they arise, without the need for repeated and repeatedly expensive (in attorney and agency time and cost) discovery into the latest activity or policy.

The relief that we request in our motion for partial summary judgment – barring SMUD's recovery of future damages – is consistent with existing case precedent and authority. It also is consistent with sound judicial policy and encourages economy of resources. The Court should grant our motion and preclude SMUD from recovering future damages beyond the date of its complaint or, at the very latest, the date of trial.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion for partial summary judgment regarding SMUD's recovery of future or prospective damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

September 1, 2004

CERTIFICATE OF FILING

I hereby certify that on this 1st day of September 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S RECOVERY OF FUTURE OR PROSPECTIVE DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner