# In the United States Court of Federal Claims

No. 00-697 C
(Filed October 8, 2004)

******************************

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

******************************

## ORDER

Following the lifting of all stays of proceedings pending conclusion of the discovery relating to pending motions, and the completion of briefing on all pending matters, this Order addresses all unresolved dispositive motions.

### A. Plaintiff's Motion for Partial Summary Judgment on Liability and Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance

Plaintiff's complaint pleads that the Department of Energy ("DOE") has failed to dispose of Spent Nuclear Fuel ("SNF") held by Wisconsin Electric Power Company ("WE") as required by the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101, *et seq.* and its June 16, 1983 contract, number DE-CR01-83NE44425, with DOE "for disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste."

Plaintiff now seeks a ruling establishing defendant's liability for partial breach of its contract with DOE. Following the rulings in *Northern States Power Co. v.*

*United States*, 224 F.3d 1361 (Fed. Cir. 2000) and *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000), the issue of defendant's liability for partial breach of its contracts with nuclear utilities requiring DOE to dispose of SNF and/or High-Level Radioactive Waste ("HLW") is not in doubt. There is no dispute that the United States, operating through DOE, failed to meet the contractual requirement to begin disposal of the nuclear waste covered by the contracts by no later than January 31, 1998.

Defendant, in effect, concedes it is liable for breach of contract to the extent of the nuclear waste for which WE received DOE approval of a delivery commitment schedule ("DCS"). However, defendant objects to a liability determination grounded on DOE's failure to dispose of any remaining SNF and/or HLW held by WE. Defendant seeks partial summary judgment regarding the rate of SNF acceptance to establish this limitation as to recoverable damages. Plaintiff objects to this asserted limitation on the damages it seeks.

Consistent with the rulings in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) and *Indiana Michigan Power Co. v. United States*, 57 Fed. Cl. 88 (2003), it is concluded that the extent of defendant's liability for breach of Contract DE-CR01-83NE44425, by reason of DOE's failure to begin disposal of SNF and/or HLW as provided therein, can not be resolved or limited by means of the motions at issue. Rather, liability for damages can only be resolved after trial proceedings and in the context of the specific amounts to be claimed by WE. That is, assuming that the cost of constructing and operating an Independent Spent Fuel Shortage Installation ("ISFSI") is one item claimed as damages for DOE's failure timely to commence disposal activity, among the issues, beyond the cost itself, which will need to be resolved are: the capacity of WE's Spent Fuel Pool; the rate of discharge into the pool; the quantity of SNF that would have been required to be removed from the pool to obviate any need for ISFSI construction; the time period(s) within which it would be necessary for DOE to dispose of some quantity of WE's nuclear waste to obviate any need for an ISFSI; the relationship or lack of relationship of ISFSI construction to DOE's failure to commence disposal activity; the amount, or range of amounts, of SNF and/or HLW for DOE disposal the parties to Contract DE-CR01-83NE44425 reasonably contemplated or relied upon for relevant planning during any specific time period(s).

At this stage in the proceedings it is not at all clear that a determination of any specific overall annual rate of acceptance for SNF and/or HLW from all utilities will be required in order to resolve the question of defendant's liability for specific damage items claimed by plaintiff. Obtaining disclosure of these specific damage items and calculations is an initial step in the resolution process. In this regard the same approach, as previously adopted in the Order, filed June 26, 2003, in *Yankee Atomic Electric Co. v. United States*, No. 98-126 C and the Order, filed April 7, 2004, in *Southern Nuclear Operating Company v. United States*, No. 98-614 C, is adopted here. That is, the ruling on the rate of acceptance issue in *Commonwealth Edison Co., supra,* is adopted, with the exception that the possibility is reserved of employing the "call" authority (28 U.S.C. § 2507(a)) to obtain a comprehensive multi-year SNF acceptance schedule on terms set by the court, in the unlikely event this would be required in order to resolve damage issues.

Accordingly, plaintiff's motion for partial summary judgment on liability shall be granted, but the issue of liability for any specific item(s) of damages claimed remains open for resolution on the basis of further evidentiary proceedings.

### B. Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Greater Than Class C Radioactive Waste Arguments

Defendant seeks a ruling that Greater than Class C Waste ("GTCC") is not covered by Contract DE-CR01-83NE44425, in that it is not SNF or HLW. Defendant argues that DOE has no contractual obligation to dispose of WE's GTCC. Defendant does concede that it has a statutory obligation to assume responsibility for the disposal of GTCC pursuant to the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("LLRWPA"), 42 U.S.C. §§ 2021b-2021i. However, this Act provides no time limits with respect to DOE's obligation to dispose of GTCC.

Low-level radioactive waste is classified as GTCC if it exceeds the Class C concentration limits for certain radioactive nuclides. This waste comes primarily from metal components in the reactor that absorb neutrons during the reactor's operation and become irradiated.

Plaintiff argues that GTCC is covered by Contract DE-CR01-83NE44425 in that it falls within the contractual definition of "high-level radioactive waste" which includes

any highly radioactive material that the Nuclear Regulatory Commission determines by rule requires permanent isolation.

Plaintiff's Complaint makes no reference to GTCC waste. The Complaint addresses only DOE's failure to dispose of WE's SNF. It is not clear that plaintiff is asserting any claim based on GTCC waste. If no GTCC waste is involved in plaintiff's claim, consistent with the April 7, 2004 Order entered in *Southern Nuclear Operating Co.,* No. 98-614 C, the matter is not ripe for a judicial decision. If plaintiff amends its Complaint to include GTCC, then consistent with the June 26, 2003 Order issued in *Yankee Atomic*, No. 98-126 C, material facts concerning DOE's GTCC policy and NRC's actions are in dispute so that further evidentiary proceedings are required. Defendant's motion shall be denied.

### C. Defendant's Motion to Dismiss Count Three of Plaintiff's Complaint

In count three of plaintiff's Complaint, DOE's failure to dispose of WE's SNF is alleged to effect "a taking by DOE of WE's property interests for a public purpose, which requires DOE to pay WE just compensation for that property under the Takings Clause of the Fifth Amendment to the U.S. Constitution."

Defendant's motion seeks a determination that plaintiff's "taking" count cannot survive a ruling that defendant is liable for breach of contract. While plaintiff argues that its taking count is based on restrictions on its Point Beach real estate, it is clear that these asserted restrictions stem from the failure of DOE to dispose of SNF and/or HLW as required by contract. Accordingly the Circuit Court's decision in *Castle v. United States,* 301 F.3d 1328 (Fed. Cir. 2002) precludes the existence of a viable taking claim when the rights involved are enforceable through a contract remedy.

Should, however, plaintiff's claim involve nuclear waste, such as GTCC, which defendant asserts is not covered by Contract DE-CR01-83NE44425, but which is the responsibility of DOE for disposal, then the continued presence of GTCC on WE's real estate, with resulting restriction as to use of the property, could raise a takings issue. *See Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003).

Thus, defendant's motion shall be partially granted in that plaintiff's count three shall be dismissed to the extent the taking alleged is premised on the failure of DOE

to remove SNF and/or HLW covered by Contract DE-CR01-83NE44425, and shall, otherwise, be denied.

Accordingly, it is **ORDERED**:

(1) Plaintiff's motion for Partial Summary Judgment on Liability, filed April 28, 2004, shall be **GRANTED** to the extent that DOE's failure timely to begin disposal activity with respect to WE's SNF and/or HLW covered by Contract DE-CR01-83NE44425 shall constitute a partial breach of this contract;

(2) Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance, filed December 3, 2001, shall be **DENIED**;

(3) Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Greater Than Class C Radioactive Waste Arguments, filed November 28, 2001, shall be **DENIED**;

(4) Defendant's Motion to Dismiss Count Three of Plaintiff's Complaint is **GRANTED** to the extent that plaintiff's count three shall be **DISMISSED** to the extent the taking alleged is premised on the failure of DOE to dispose of SNF and/or HLW covered by Contract DE-CR01-83NE44425, and, otherwise shall be **DENIED**;

(5) The Motions to Strike, filed by defendant on June 18, 2003 and by plaintiff on February 18, 2004, shall be **GRANTED**.[1/]

s/ James F. Merow
James F. Merow
Senior Judge

[1/] The Motion for Leave to File Surreply, filed July 23, 2003, shall be **DENIED as MOOT**, whereas the motion, filed February 18, 2004, for leave to file plaintiff's opposition shall be **GRANTED**.

ORIGINAL

# In the United States Court of Federal Claims

No. 98-614C
(Filed April 7, 2004)

FILED
APR 7 2004
U.S. COURT OF FEDERAL CLAIMS

********************************

SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY, GEORGIA POWER COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

********************************

## ORDER

Following the lifting of all stays of proceedings pending conclusion of discovery and other matters and with the subsequent completion of briefing, this order addresses all unresolved dispositive motions. These include: (1) Plaintiffs' Motion for Summary Judgment on Contract Liability, filed October 2, 1998; (2) Defendant's Motion to Dismiss, filed December 22, 1998; (3) Defendant's Motion to Dismiss Count IV of Plaintiffs' Complaint, filed November 27, 2001; (4) Defendant's Motion for Partial Summary Judgment Regarding Plaintiffs' Greater Than Class C Radioactive Waste Arguments, filed November 28, 2001; (5) Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance, filed December 3, 2001 and plaintiffs' cross-motion, filed December 18, 2002; (6) Defendant's Motion to Dismiss Count Three of Plaintiffs' Complaint, filed December 14, 2001; and, (7) Defendant's Motion to Dismiss Southern Nuclear Operating Company as a Plaintiff for Lack of Subject Matter Jurisdiction, filed December 21, 2001.

VAN
234

A. **Defendant's Motion to Dismiss, filed December 21, 2001.**

Defendant's Motion to Dismiss, filed December 21, 2001, contests the status of Southern Nuclear Operating Company ("SNC") as a plaintiff in this breach of contract litigation. The Standard Contracts at issue, for disposal of spent nuclear fuel ("SNF"), were executed by the United States and plant owners, Alabama Power Company ("APC") and Georgia Power Company ("GPC"). SNC is not a contracting party with the United States, but has operating agreements with plant owners, APC and GPC, whereby it

> is responsible for, *inter alia* possession, management, control, operation, maintenance, shutdown and decommissioning of the plants including, but not limited to: (1) execution, administration and enforcement of contracts for the purchase of nuclear fuel and fuel services, which include the storage and disposal of SNF, necessary for the operation of those plants; and (2) management and storage of SNF generated by the plants until such time as it is removed by the Government pursuant to Standard Contracts.

All of SNC's activities are funded through payments to SNC under these operating agreements.

By letters, dated February 22, 1991, APC and GPC, as purchasers under the SNF contracts, notified the Department of Energy ("DOE") contracting officer assigned to the SNF contracts at issue that,

> you are hereby advised that Southern Nuclear Operating Company, Inc., a Delaware corporation, is designated by Purchaser as agent for Purchaser under the referenced agreements, to act for and on behalf of Purchaser for the purpose of giving or receiving any notice, demand or request required or authorized by the referenced agreements, and for such other administrative purposes as may be designated by Purchaser.

The letters also stated that pursuant to Article XII of the contracts, SNC was to receive all notices and communications between the parties. (Pls.' Resp., filed January 24, 2002, Exs. C, D, E). Accordingly, the DOE has dealt with SNC as agent for plant owners, APC and GPC on matters affecting APC's and GPC's interests

under the standard SNF contracts at issue. (Pls.' Resp., filed January 24, 2002, Exs. F-J).

In these circumstances, defendant argues that SNC lacks privity of contract with the United States and must be dismissed as a plaintiff. *United States v. Johnson Controls*, 713 F.2d 1541, 1550 (Fed. Cir. 1983); *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed. Cir. 1984); *Total Med. Mgt., Inc. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997).

In response, plaintiffs note that APC, GPC and SNC are subsidiaries of Southern Company, and that SNC was incorporated on December 17, 1990, for the express purpose of acting as operating agent for APC and GPC with respect to the operation and maintenance of their nuclear power plants. Plaintiffs state,

> Southern Nuclear joined as plaintiff in this case in order to avoid any argument over whether it, APC or GPC was the real party in interest, to eliminate inefficiencies that could arise in discovery and in trial if SNC were not a party and to enable it to fulfill its role as agent and attorney-in-fact for APC and GPC for the enforcement of the Standard Contracts.

Pls.' Resp., p. 4, n.3.

Plaintiff states that SNC has not asserted any contractual claims against the United States but sues in a representative capacity asserting APC's and GPC's breach of contract claims. Reliance is placed on precedent permitting representative suits by shareholders of corporations, sureties, and third-party beneficiaries. *Montana v. United States*, 124 F.3d 1269 (Fed. Cir. 1997), *First Hartford Corp. Pension Plan and Trust v. United States*, 194 F.3d 1279 (Fed. Cir. 1999); *Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985).

Clearly, the circumstances involved here differ from a shareholder derivative action or a suit brought by a third-party beneficiary or litigation by a surety on a subrogation basis. If APC and GPC were not parties, dismissal of this litigation would be in order as contractual privity with the United States is a prerequisite to a breach of contract suit brought pursuant to 28 U.S. C. § 1491. *First Hartford Corp.*,

194 F.3d at 1289. The issue raised is whether SNC can be retained in this litigation for litigation convenience purposes.[1/]

The court lacks jurisdiction to consider or resolve any issues between APC, GPC, and SNC concerning their operating agreements. Absent contractual privity between SNC and the United States, no judgment can be rendered in favor of SNC. However, as plaintiffs have indicated, SNC's voluntary participation in this litigation could facilitate discovery and trial proceedings.

Moreover, it is concluded that SNC has a sufficient "interest" in the subject matter of this litigation, as this term is utilized in RCFC 14(b), to support the service of a notice, leading to third party intervention, had SNC not joined as a plaintiff. *See Allied Oil & Supply, Inc. v. United States*, __ Fed. Cl. __ (No. 03-2673 C, filed April 1, 2004).

Accordingly, it is concluded that the best solution is for the issue of SNC's status in this matter to be resolved at the conclusion of the litigation process. At that point the issue may be moot or, at least the exact nature of the claims asserted in this matter will be clear and any final judgment(s) can be drafted so as to insure that it is predicated on a firm jurisdictional basis. Defendant's motion to dismiss shall be denied, without prejudice to the reassertion of the matter pursuant to RCFC 52(c) or in any pre-judgment briefing.

**B. <u>Plaintiffs' Motion for Summary Judgment on Contract Liability; Defendant's Motion to Dismiss.</u>**

As has been noted in several submissions to date, the issues raised in Plaintiffs' Motion for Summary Judgment on Contract Liability, filed October 2, 1998, and Defendant's Motion to Dismiss, filed December 22, 1998, have been essentially moot since the Circuit Court's rulings affirming defendant's partial breach of the Standard Contracts in *Northern States Power Co. v. United States,* 224 F.3d 1361 (Fed. Cir.

---

[1/] Count IV of plaintiffs' Amended Complaint asserts a "taking" claim that "DOE's failure to commence disposal and, its announcement that it will not begin to dispose of SNF before 2010, at the earliest, took the Companies' vested property rights, as expressed and implied in, and arising from, the Standard Contracts." No "taking" claim divorced from contract derived rights is asserted. Thus, SNC has not pleaded any "taking" claim independent of the Standard Contracts executed by APC and GPC.

2000) and *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000). There is no dispute concerning the fact that the United States, operating through DOE, failed to meet the contractual requirement to begin disposition of the nuclear waste covered by the Standard Contracts by no later than January 31, 1998. Thus, the government partially breached the Standard Contracts executed by APC and GPC and plaintiffs' October 2, 1998 motion shall be granted accordingly as to the issue of contract liability. Defendant's motion, filed December 22, 1998, shall be denied.

### C. Defendant's Motion to Dismiss Count IV of the Complaint.

Defendant's November 27, 2001 motion seeks the dismissal of Count IV of the Complaint. The same count is included in the First Amended Complaint, filed October 8, 2002. In paragraph 57 of the Amended Complaint, plaintiffs plead a taking without just compensation in that "DOE's failure to commence disposal and, its announcement that it will not begin to dispose of SNF before 2010, at the earliest, took the companies' vested property rights as expressed and implied in, and arising from, the Standard Contracts." Defendant seeks dismissal asserting that Count IV fails to state a claim upon which relief may be granted.

As asserted in the Complaint and Amended Complaint, plaintiffs' taking claim is grounded on the SNF contracts that APC and GPC executed with the United States. The Circuit Court's decision in *Castle v. United States*, 301 F.3d 1328 (Fed. Cir. 2002) precludes the existence of a viable taking claim when the rights involved are enforceable through a contract remedy. In this circumstance, in accord with the ruling in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003), plaintiffs' Count IV, as pleaded, shall be dismissed, as liability for a partial breach of the SNF contracts by the United States has been found. Plaintiffs' asserted loss of contract rights will be vindicated through breach of contract damages.

### D. Defendant's Motion for Partial Summary Judgment Regarding Plaintiffs' Greater Than Class C Radioactive Waste.

Defendant seeks a ruling that Greater Than Class C radioactive waste ("GTCC") is not covered by the SNF Standard Contracts executed by APC and GPC. Plaintiffs' response is that they are not claiming damages based on DOE's failure to accept GTCC, with the result that any ruling on the contract coverage with respect to

GTCC would be advisory only. In this circumstance, in accord with the ruling in *Commonwealth Edison Co. v. United States*, *Id.*, it is concluded that the question of whether GTCC is included in defendant's contractual obligations is not ripe for judicial decision in this matter. Defendant's motion shall be denied .

### E. Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance and Plaintiffs' Cross-Motion.

Defendant seeks a ruling that the rate of acceptance to dispose of nuclear waste covered by the Standard Contracts executed by APC and GPC is established by the delivery commitment schedule ("DCS") and final delivery schedule ("FDS") process set forth in the contracts. The rulings in *Commonwealth Edison Co. v. United States*, *Id.* and *Indiana Michigan Power Co. v. United States*, 57 Fed. Cl. 88 (2003) reject defendant's approach in favor of a construction that the rate of acceptance intended by the contracting parties is missing and must be supplied by the court. In *Commonwealth Edison Co.*, the rate issue was relegated to further proceedings whereas in *Indiana Michigan*, a 400 metric ton rate for 1998 which ramped up to 3,000 metric tons per year by the end of 2002 was found on the basis of summary judgment submissions.

The Order, filed June 26, 2003, in *Yankee Atomic Electric Co. v. United States*, No. 98-126 C, adopted the *Commonwealth Edison Co.* ruling on the rate of acceptance issue with the exception that the possibility was reserved of employing the "call" authority (28 U.S.C. § 2507(a)) to obtain a comprehensive multi-year SNF pick-up schedule in the unlikely event this would be required in order to resolve damage issues.

An analysis of the extensive submissions on this rate issue by the parties results in adopting the same approach as that applied in the *Yankee* litigation. The rate issue, to the extent relevant, must be resolved by further proceedings. While in *Indiana Michigan*, a 3,000 metric ton annual rate was established, the rationale on which it was based is that this quantity was needed to prevent additional SNF on-site storage for all utilities and to begin to eliminate SNF backlog. 57 Fed. Cl. at 99. However, applying an overall annual rate to any one utility to arrive at a damage computation could be complicated. Would excess capacity at other utilities also be utilized to avoid additional on-site storage? The Standard Contract contemplated exchanges of

priorities between utilities. What rate of acceptance by DOE would have been necessary to avoid additional on-site storage at APC or GPC given the age of their stored fuel, their SNF pool capacity, and the production of waste at the specified plants involved in this litigation? Would such a rate be within the range contemplated by the parties? When would disposition have to commence in order to avoid additional on-site storage at APC or GPC?

What is required are schedules of the specific damages claimed by plaintiffs APC and GPC so that any rate determination(s), if any, that may be required in order to resolve issues of liability for the damage items sought can be reached in the context of the actual circumstances involved.

Accordingly, defendant's motion, filed December 3, 2001 and plaintiffs' cross-motion, filed December 18, 2002, shall be denied, as further proceedings are needed for any rate determination(s) which may be required for determining liability for the specific breach of contract damages claimed by APC and GPC.[2]

F. <u>Defendant's Motion to Dismiss Count Three of Plaintiffs' Complaint.</u>

Defendant's Motion, filed December 14, 2001, seeks the dismissal of count three of the complaint, which pleads an illegal exaction claim. The same count is included in the First Amended Complaint, filed October 8, 2002. By Order, filed January 16, 2002, it was noted that plaintiffs had reported they would "not argue further its position on the illegal exaction count" but "reserves its right to contest this issue in any appeal of this matter, or in another court of competent jurisdiction." Accordingly, the January 16, 2002 Order stated that "(4) Pending entry of a final judgment, further proceedings in this litigation shall not involve count three of plaintiffs' Complaint, filed July 29, 1998."

In order to clear the docket entries involved, and in view of plaintiffs' assertion that the issue will not be pressed short of any appeal, defendant's motion, filed

---

[2] On April 11, 2003, plaintiffs filed a Motion to Strike pages 1584-1599 from the appendix to plaintiffs' opposition to the Government's December 3, 2001 motion. These pages contain document CTR0400568-0583. In the absence of any response, plaintiffs' April 11, 2003 Motion to strike shall be **GRANTED**.

December 14, 2001, shall be denied, without prejudice to its renewal as a RCFC 52(c) matter or in final briefing.

## Conclusion

In accordance with the discussion above, it is **ORDERED**:

(1) Defendant's Motion to Dismiss Southern Nuclear Operating Company as a Plaintiff, filed December 21, 2001, shall be **DENIED**, without prejudice to its reassertion pursuant to RCFC 52(c) or in pre-judgment briefing;

(2) Plaintiffs' Motion for Summary Judgment on Contract Liability, filed October 2, 1998, shall be **GRANTED** to the extent that defendant's failure by January 31, 1998, to commence disposition of nuclear waste covered by the Standard Contracts it executed with APC and GPC shall comprise a partial breach of these contracts for which defendant is liable;

(3) Defendant's Motion to Dismiss, filed December 22, 1998, shall be **DENIED**;

(4) Defendant's Motion, filed November 27, 2001, to Dismiss Count IV of Plaintiffs' Complaint, as included in the First Amended Complaint, shall be **GRANTED**;

(5) Defendant's Motion for Partial Summary Judgment Regarding Plaintiffs' Greater Than Class C Radioactive Waste Arguments, filed November 28, 2001, shall be **DENIED**;

(6) Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance, filed December 3, 2001, and Plaintiffs' Cross-Motion, filed December 18, 2002, shall both be **DENIED** as the ruling in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) that further proceedings are required on this matter, is here adopted with the limited exception stated above;

(7) Plaintiffs' Motion to Strike, filed April 11, 2003, shall be **GRANTED**;

(8) Defendant's Motion, filed December 14, 2001, to Dismiss Count Three of the Complaint, also included in the First Amended Complaint, shall be **DENIED** without prejudice to its renewal pursuant to RCFC 52(c) or in final briefing.

James F. Merow
Senior Judge