IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) | |
| Plaintiff, | ) | No. 98-488 C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**SACRAMENTO MUNICIPAL UTILITY DISTRICT'S MOTION FOR LEAVE TO FILE DESIGNATED DEPOSITION AND TRIAL TESTIMONY AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FRE 801(d)**

## I. Introduction

Plaintiff, Sacramento Municipal Utility District ("SMUD"), respectfully submits this motion for leave to file designated deposition and trial testimony as substantive evidence in SMUD's affirmative case. Plaintiff seeks the admission of designated portions of the trial and deposition testimony of Government lay and expert witnesses under Rule 801(d) of the Federal Rules of Evidence ("FRE") and Rule 32(a) of the Rules of the Court of Federal Claims ("RCFC"). In addition, Plaintiff seeks the admission of designated portions of the deposition testimony of two SMUD witnesses, Rita Bowser and S. David Freeman, pursuant to RCFC 32(a)(3)(B). The designated deposition and trial testimony is identified by date, page, and line number, in a chart attached at Attachment 1, and copies of the designated testimony are filed separately in paper copy in SMUD's Appendix to accompany the motion, Exhibits 1-31.

Plaintiff recognizes that the Court has allocated two weeks for trial in this case and accordingly files this motion to expedite presentation of its case at trial. All of the Government's witnesses have been deposed in this action or in similar Spent Nuclear Fuel ("SNF") cases and a

number of them have already testified at trial in other SNF cases on issues directly relevant to the present case. As explained below, the prior deposition and trial testimony of these witnesses is admissible under RCFC and the FRE, and admission of that testimony as substantive evidence will significantly enhance the efficiency of this proceeding without compromising fairness and justice to the parties.

Under the terms of RCFC Appendix A, ¶ 15(b), Plaintiff is not required to file a motion for leave to file deposition testimony admissible under FRE 801(d). See RCFC Appendix A, ¶ 15(b); Globe Sav. Bank, F.S.B. v. United States, 61 Fed. Cl. 91, 96 (2004); Weaver-Bailey Contractors, Inc. v. United States, 19 Cl. Ct. 474, 482-483 (1990) (holding that the equivalent predecessor to RCFC Appendix A, ¶ 15(b) in the U.S. Claims Court Rules made the question of whether plaintiff filed a motion to seek admission of testimony pursuant to FRE 801(d) "irrelevant"). Nevertheless, as a courtesy to Defendant and the Court, the present motion addresses the deposition and trial testimony that Plaintiff proffers as substantive evidence at the present time, including testimony admissible under FRE 801(d). Plaintiff reserves the right to seek the admission of additional trial and deposition testimony under FRE 801(d), as contemplated by RCFC Appendix A, ¶ 15(b).

## II. Argument

### A. Plaintiff's Proffered Testimony from Government Lay Witnesses is Admissible as Substantive Evidence Under FRE 801(d) and/or RCFC 32

#### 1. This Court Has Previously Determined That Trial and Deposition Testimony from Government Lay Witnesses in Other SNF Cases Will be Treated As If It Was Taken in the Present Case

This Court has approved the parties' Joint Stipulation that the deposition and trial testimony of the Government's lay witnesses from all other SNF cases will be treated for evidentiary purposes as if such testimony were taken or given in the present lawsuit and that all

such deposition testimony will be treated as if taken in the present lawsuit under RCFC 32(a). Joint Stipulation and Order Regarding the Treatment of Depositions from Other Spent Nuclear Fuel Cases, September 27, 2004 ("Joint Stipulation and Order"). The Joint Stipulation and Order specifically states and finds that the Government had an opportunity and similar motive to develop such prior testimony under FRE 804(b)(1). Id. Thus, where the RCFC and FRE allow admission of the testimony designated by this motion, no further bar exists to the admissibility of Government lay witness testimony.[1]

**2.** Proffered Portions of Deposition and Trial Testimony of Government Employees Testifying as Lay Witnesses are Admissible as Non-Hearsay Admissions of a Party Opponent Pursuant to FRE 801(d)(2)(D)

SMUD seeks the admission of the trial and deposition testimony of Government lay witnesses in Exhibits 1-20 as substantive evidence under FRE 801(d)(2)(D). Under FRE 801(d)(2), "a statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is an admission by a party-opponent and admissible as non-hearsay.[2] The deponent need not be unavailable for these statements to be admitted. Globe Sav. Bank, 61 Fed. Cl. at 94-95. FRE 801(d)(2) provides an independent ground for admission of testimony and the party seeking admission is not also required to satisfy the requirements of RCFC 32. Globe Sav. Bank, 61 Fed. Cl. at 95-96.

"It is a 'widely-accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'" Id. at 96-97 (quoting Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (7th Cir. 2003). A statement is

[1] The parties have been unable to agree regarding the treatment of deposition and trial testimony of Government expert witnesses from other SNF cases. See Joint Stipulation and Order at 2.

[2] A "statement" is broadly broadly defined for this purpose to include "an oral or written assertion." FRE 801(a).

admissible as a non-hearsay admission of a party-opponent if: (1) the statement is offered against a party; (2) the statement concerns a matter within the scope of the declarant's agency or employment; and (3) the statement is made during the existence of the relationship. See FRE 801(d)(2)(D); Globe Sav. Bank, 61 Fed. Cl. at 96-87.

The proffered deposition and trial testimony of Government employees in the accompanying Appendix at Exhibits 1-20 satisfies all three of these requirements, as discussed in more detail below with regard to each individual witness. First, all of the statements are offered against a party, the Government, and, second, the statements all concern matters within the scope of the declarants' respective employment. For this second prong of the test, "'[t]he only requirement is that the subject matter of the admission match the subject matter of the employee's job description.'" Globe Sav. Bank, 61 Fed. Cl. at 97 (quoting Aliotta, 315 F.3d at 762).

Third, the statements offered were all made while the declarant was an employee of the Government. Where the employer is the Government, satisfaction of the third prong of the test for admissibility under FRE 801(d)(2)(D) does not depend on which agency or division of the Government the declarant is with at either the time of the statement or the time to which the statement relates. "The Rule expressly concerns the declarant's relationship with the party-opponent, which in this case is the United States, not a particular agency." Globe Sav. Bank, 61 Fed. Cl. at 97. In that case, Judge Lettow of this Court concluded that the deposition testimony of a former employee of the Federal Savings and Loan Insurance Corporation was admissible even though the declarant was working for a different agency of the Government at the time he made the admissions. Id.; see also Myers Investigative and Sec. Servs., Inc. v. United States, 47 Fed. Cl. 288, 295 (2000); United States v. American Tel. & Tel. Co., 498 F. Supp. 353, 358 (D.D.C. 1980) ("The adversaries of this litigation are not the Department of Justice and the Legal

Office of AT&T; they are the United States of America and the American Telephone and Telegraph Company, …"). Thus, so long as the declarant is employed by the Government at the time of the testimony, the third requirement is satisfied.

As set forth below, SMUD's proferred testimony from the Government employees satisfies the requirements of FRE 801(d)(2)(D).

*Lake Barrett*

Plaintiff is seeking the admission of deposition testimony from Lake Barrett from April 22, April 23, May 8, May 10, May 14, and May 15, 2002. Ex. 1. At the time he was deposed, Mr. Barrett was the Deputy Director of Office of Civilian Radioactive Waste Management ("OCRWM") at the DOE.[3] Id. (4/22/02 tr. at 10:21-11:1).

As the Deputy Director of OCRWM, Mr. Barrett was the second-ranking officer in the spent fuel program. Mr. Barrett has held leadership roles in OCRWM and has been either the Acting Director or the Deputy Director of OCRWM since 1993. Id. (4/22/02 at 84:2-85:2). He had "ultimate responsibility" for OCRWM's ACRs and Delivery Commitment Schedules ("DCSs"). Id. at 138:2-17. The designated testimony of Mr. Barrett relates to the spent fuel program of which he was a Director for many years, particularly with regard to the government's expected acceptance rate of fuel and the role and purpose of DCSs. This testimony falls within the scope of Mr. Barrett's employment with the Government and is admissible under FRE 801(d)(2)(D).

*Ronald Milner*

SMUD is offering designations from the testimony of Ronald Milner from his May 1, May 2, May 3, May 7, and May 8 deposition and from the proceedings on August 11, 2004. Ex.

[3] The Office of Civilian Radioactive Waste Management ("OCRWM") is the arm of the Department of Energy that is charged with carrying out the functions of the Secretary of Energy under the Nuclear Waste Policy Act. See 42 U.S.C. § 10244; 42 U.S.C. § 10131(b)(2).

2. At the time of his depositions and trial testimony, Mr. Milner was the Chief Operating Officer of OCRWM and was therefore an employee of the Government. Id. (5/1/02 at 11:23-12:5; 8/11/04 at 4712:2-4712:3).

As the Chief Operating Officer, Mr. Milner was the third-ranking officer of OCRWM. Mr. Milner first joined OCRWM in April of 1984. 8/11/04 at 4712:18-20. Throughout his employment there, he had responsibility for preparation of OCRWM publications, including its Total System Life Cycle Cost ("TSLCC") and Fee Adequacy Reports. 8/11/04 at 4713:2-4715:24. The scope of his work included issues related to a Monitored Retrievable Storage Facility ("MRS"), OCRWM's transportation program, waste acceptance issues, the preparation of annual reports, and processing of DCSs. 8/11/04 at 4712: 2-4716:7. The testimony SMUD has designated relates to issues within the scope of Mr. Milner's employment with the DOE, including the DOEs TSLCC and Fee Adequacy Reports, the DOE's planned acceptance rate, issues related to an MRS, and DCSs.

*Alan Brownstein*

SMUD has designated portions of the deposition testimony of Alan Brownstein from April 9, April 10, April 11, May 23, and June 14, 2002. Ex. 3. When deposed in 2002, Mr. Brownstein was a DOE employee, serving as a Senior Policy Advisor to the Director of OCRWM. Id. (4/9/02 tr. at 9:21-10:14).

Mr. Brownstein joined the DOE in 1985. Id. at 13:21-25. Beginning in 1985, he was a nuclear industry specialist in the Spent Fuel Program, where he had responsibility for various "schedule" issue matters, such as creating the ACRs. Id. at 31:10-32:5; 33:7-34:7. From the late 1980s up to the early part of 1995, Mr. Brownstein served as the Branch Chief, and later as a Division Leader. Id. at 34:8-35:20. Mr. Brownstein testified that from 1985 to 1995 he was responsible for implementing the terms of the standard contract and dealing with the utility

industry. Id. 37:3-9, 40:11-41:10. The designated deposition testimony of Mr. Brownstein all relates to issues that were within the scope of his duties at DOE, and are therefore admissible.

*Thomas Pollog*

Portions of the testimony of Thomas Pollog have been designated from Mr. Pollog's depositions on April 11 and 12, 2002, and May 15, 16, and 22, 2002 and from his testimony at the *Yankee* trial on August 4, 2004. Ex. 4. Mr Pollog was an employee of the Government working in OCRWM at the DOE at the time of his deposition and trial testimony. Id. (8/4/04 at 3902:21-3904:13).

As part of his employment responsibilities, Mr. Pollog is currently assigned to implement the standard contract between the DOE and utility contract holders and provides technical expertise to the DOE's Contracting Officer. Id. at 3902:21-3904:13. During his time at the DOE, he has worked on managing and implementing the standard contract and various waste acceptance functions. Id. at 3948:2-3948:21. The designated portions of testimony address issues related to the scope of Mr. Pollog's work involving the standard contract, including onsite storage and transportation, DCSs, acceptance rate and priority for shutdown utilities, the MRS, GTCC, and failed fuel. As such, this testimony as admissible under FRE 801(d)(2)(D).

*David Zabransky*

SMUD has designated portions of the deposition testimony of David Zabransky from April 17, 2002, April 18, 2002, April 19, 2002, and June 6, 2002, and the trial testimony from the Yankee cases from August 8, 2004. Ex. 5. Mr. Zabransky was working for DOE as the contracting officer for the Standard Contract at the time of his trial testimony and as the technical representative to the contracting officer at the time of his depositions. See 8/05/04 tr. at 4110:15-4112:5.

Mr. Zabransky has worked for DOE in OCRWM since 1994. Id. at 4112:1-3. His responsibilities included work on issues related to the Standard Contract, other technical issues on commercial waste acceptance, and providing advice on issues relating to the administration of the Standard Contract. See 8/05/04 tr. at 4110:15-4112:5. The designated portions of Mr. Zabransky's testimony relate to his work on issues related to the Standard Contract, as well as technical issues on commercial waste acceptance, and are, therefore, areas within the scope of his work at the DOE and are admissible.

*David Huizenga*

Plaintiff has included in its designations portions of the trial testimony of David Huizenga in the Yankee case on August 8, 2004. Ex. 6. Mr. Huizenga was an employee of the Government at the time of the trial. Id. 8/8/04 tr. at 4371:3.

Between 2000 and 2002, Mr. Huizenga worked as the Deputy Assistant Secretary for the Office of Integration, within the Office of Environmental Management at the DOE. He had responsibility for dealing with the clean-up of nuclear waste across the United States. Mr. Huizenga also had responsibility for issues regarding GTCC, including policy issues concerning the management of GTCC. 8/10/04 at 4372:20-4374:5. The portions of testimony that SMUD has designated relate to GTCC and therefore fall within the scope of Mr. Huizenga's employment.

*Leroy Stewart*

SMUD has designated portions of the deposition testimony of Leroy Stewart from July 1, 2004. Ex. 7. Mr. Stewart was working for DOE in the science and technology and international office at the time of his deposition. See 7/01/04 tr. at 19:8-10.

Mr. Stewart has worked for DOE since 1980, starting in the Office of Inspector General in 1980 and transferring to OCRWM in 1991. Id. at 13:11-15, 17:10-12. Mr. Stewart was the DOE headquarters member on the technical management committee for the DOE/SMUD Cooperative Agreement during the entire duration of the Cooperative Agreement. Id. at 73:18-74:8. Mr. Stewart's responsibilities also included preparing a report to Congress to develop the basis for the cooperative demonstration project with SMUD. Id. at 83:3-22. Mr. Stewart's responsibilities at OCRWM also included managing spent fuel for DOE field operations sites, like West Valley, New York and Idaho National Laboratory. Id. at 19:13-20:4. The designated portions of Mr. Stewart's testimony relate to his work on the DOE/SMUD Cooperative Agreement and the management of SNF, and are areas within the scope of his work at DOE and are, therefore, admissible.

*William Knoll*

SMUD has designated portions of the deposition testimony of William Knoll taken in this case on January 4, 2005. Ex. 8. At the time of his deposition, Mr. Knoll was employed by the Government as a Commander in the United States Navy. Id. (1/4/05 tr. at 8:10-12).

Mr. Knoll has worked at the Navy since 1986, working on nuclear issues throughout his time there. Id. at 15:19-16:5. The designated portions of Mr. Knoll's testimony relate to his involvement in the Department of the Navy's Environmental Impact Statement for a Container System for the Management of Naval Spent Nuclear Fuel and the Navy's decision to pursue a dual-purpose canister-based system, matters in which he had extensive involvement as part of his

job. See id. at 63:7-65:19. The designated portions of Mr. Knoll's deposition testimony are therefore admissible as admissions by a party-opponent pursuant to FRE 801(d)(2)(D).

*Keith Klein*

SMUD has included in its designations deposition testimony given by Keith Klein on May 22, 2002. Ex. 9. At the time of his deposition, Mr. Klein was employed by the Government as Manager of the Richland Operations Office of the Department of Energy. Id. (5/22/02 tr. at 12:5-8).

Mr. Klein worked at the DOE's OCRWM starting from around the time the National Waste Policy Act was passed in 1982. His work there was associated with the storage and transportation of waste, predominantly SNF. Id. (5/22/02 tr. at 18:12-23, 19:22-20:3). Before he began work in his position at OCRWM, Mr. Klein was employed in the DOE as a Director of Storage, responsible for establishing a program to demonstrate the viability and licensing basis for dry cask storage at nuclear reactor sites. Id. at 21:24-22:8. The designated portions of Mr. Klein's testimony relate to aspects of implementation of the National Waste Policy Act, including transportation issues, acceptance rates, and exchange provisions for utilities to change their place in the pick-up queue. The designations also include testimony regarding the development of the Standard Contract. All of these matters fall within the scope of Mr. Klein's employment with the DOE during the relevant time period.

*Christopher Kouts*

SMUD offers designated portions of the August 2, 2004 testimony of Christopher Kouts given at the trial in Yankee. Ex. 10. Mr. Kouts was employed with OCRWM at the DOE at the time of this trial testimony. Id. (8/12/04 tr. at 3444:5-12).

Mr. Kouts has been with the OCRWM at the DOE since 1985, during which time his responsibilities have included planning for waste acceptance from utilities pursuant to the Standard Contract. Id. at 3444:13-3445:4, 3445:21-3448:1. The testimony that has been designated relates to handling requirements for standard and non-standard fuel and therefore falls within the scope of Mr. Kouts' employment with the Government.Patrice Bubar

SMUD has designated portions of the deposition testimony of Patrice Bubar from May 20, 2004. Ex. 12. In addition, SMUD has designated portions of the August 12, 2004 trial testimony of Ms. Bubar from the proceedings in the Yankee case before this Court. Id. At the time of both her deposition and her trial testimony, Ms. Bubar was employed by the Government, working at the Department of Energy ("DOE") as the Deputy Assistant Secretary for Safety and Operations Oversight in the Office of Environmental Management. See id. (5/20/04 tr. at 5:18-6:3; 8/12/04 tr. at 4977:4-15).

Ms. Bubar has worked at the DOE since 1991 in positions that have included in their scope issues related to Greater-than-Class-C Waste ("GTCC"). Id. (5/20/04 tr. at 6:6-16, 10:4-21, 11:2; 8/12/04 at 4977:6-7). The designated portions of Ms. Bubar's testimony relate to the Government's plans regarding GTCC and therefore fall within the scope of Ms. Bubar's employment with the Government.

*Jeffrey Williams*

SMUD has designated portions of the deposition testimony of Jeffrey Williams from depositions taken on June 11, 2002, June 12, 2002, January 22, 2004, and November 18, 2004. Ex. 11. At the time of his depositions in June, 2002, Mr. Williams was employed by the Government, working as the Director of Systems Engineering and International Division and as the Acting Director of the Office of Acceptance, Transportation, and Integration within OCRWM at the DOE. Id. (6/21/02 tr. at 7:13-22). His responsibilities included systems analysis

of various operating concepts for the Federal Waste Management System. Id. at 10:11-24. When he was deposed in January, 2002, Mr. Williams was still employed by the Government, working as the Acting Director for the Office of Science and Technology and International. Id. (1/22/04 tr. at 8:6-10). In November, 2004, Mr. Williams was employed at the Department of Energy as a Yucca Mountain technical liaison. Id. (11/18/2004 at 17:9-20). Thus, Mr. Williams was employed by the Government at the time of his statements in the designated deposition testimony.

Prior to his employment as Director of Systems Engineering, Mr. Williams served as Director of the Engineering Division of the Office of Waste Acceptance, Storage, and Transportation from 1994, with responsibility for storage and transportation technology development. 6/11/02 tr. at 68:24-69:20. From 1991 to 1994, Mr. Williams was Chief of the Facilities Development Branch, where he was responsible for the design and issues related to the possible siting of a Monitored Retrievable Storage Facility. 6/11/02 tr. at 74:12-75:7; 75:23-76:4. During the mid-1990s, Mr. Williams had responsibility for a program involving multi-purpose casks ("MPCs"). 1/22/04 tr. at 8:11-14. In addition, during his time as Chief of the Facilities Development Branch and as director of the Engineering Division, Mr. Williams was involved with the Cooperative Agreement between SMUD and the Department of Energy. 11/18/04 tr. at 30:21-32:16.

Mr. Williams' designated testimony relates to acceptance rates, DOE work on a Monitored Retrievable Storage Facility, dual-purpose and multi-purpose storage systems, and the classification of fuel for acceptance by the DOE. In addition, the designated deposition testimony includes testimony related to the Cooperative Agreement between SMUD and the DOE. The designated portions of Mr. Williams' testimony, therefore, relate to matters that were

within the scope of his employment with the Government and are admissible under FRE 801(d)(2)(D).

*Robert M. Rosselli*

Plaintiff has included designated portions of the deposition testimony of Robert M. Rosselli from April 15, 2002 and April 16, 2002. Ex.13. At the time of these two days of deposition, Mr. Rosselli was employed at the DOE's Richland facility as Deputy Manager for Business Services. Id. (4/15/02 tr. at 20:11-22:4).

From 1982 to 1984, Mr. Rosselli was with OCRWM, working as Director of the Resource Management Division. Ex. 13 (4/16/02 tr. at 17:11-18:6; 31:5-21). In this position, he worked on developing the Standard Contract, acceptance rates for fuel, and coordinating the Office's Mission Plan, reporting directly to the Director of OCRWM. 4/15/02 at 33:10-34:13. Mr. Rosselli's designated testimony relates to development of the Standard Contract, the 1983 Mission Plan that he was responsible for preparing, the DOE's obligations under the Standard Contract and the National Waste Policy Act, and the DOE's plans for the acceptance of SNF during this time period. Thus, this testimony falls within the scope of Mr. Rosselli's employment with the Government and is admissible under FRE 801(d)(2)(D).

*Robert Campbell*

SMUD has designated portions of Robert Campbell's testimony from depositions taken on June 13-14, 2002 and May 6, 2004. Ex. 14. On both occasions, Mr. Campbell was a Program Manager employed at the DOE's Office of Environmental Management, where he had responsibility for GTCC waste issues. Id. (6/13/02 tr. at 27:5-10, 31:2-15). The designated testimony all relates to GTCC waste issues and therefore falls within the scope of Mr. Campbell's employment with the Government.

*Christopher Bajwa*

SMUD offers designated portions of the testimony of Christopher S. Bajwa from his deposition on February 18, 2004. See Ex. 17. At the time of his deposition, Mr. Bajwa worked for the Spent Fuel Project Office at the Nuclear Regulatory Commission ("NRC") as a thermal engineer and was, therefore, an employee of the Government. See id. (2/18/04 tr. at 8:15-20).

Mr. Bajwa has worked at the NRC since 1993, working on, among other matters, thermal review issues and review of spent fuel transportation and storage package designs. Id. at 9:1-21, 10:8-18. Mr. Bajwa's designated testimony relates to the thermal characteristics of fuel and the review of spent fuel transportation and storage package designs. His statements therefore concern matters within the scope of his employment.

*Stephen O'Connor*

SMUD has designated portions of testimony from the deposition of Stephen O'Connor taken on February 18, 2004. Ex.18. At the time of his deposition, Mr. O'Connor was working at the NRC as a Senior Project Manager. Id. (2/18/04 at 9:16-19).

During his time at the NRC, Mr. O'Connor has worked, among other things, on certificates of compliance, including the certification of storage and dual-purpose casks or containers, and Independent Spent Fuel Storage Installations. Id. at 9:16-10:11; 12:7- 16:1. In addition, Mr. O'Connor was disclosed by the United States as someone from the NRC with knowledge about cooling time and certificates of compliance for casks. Id. at 6:14-21. The designated deposition testimony of Mr. O'Connor relates to canning requirements for fuel assemblies, NRC requirements for the inspection of fuel, and the use of dual-purpose casks in Independent Spent Fuel Storage Installations. Thus, this testimony relates to the scope of Mr. O'Connor's employment at the NRC and is admissible.

*Nancy Slater Thompson*[4]

Plaintiff has designated portions of the testimony from the April 21-22, 1999 and June 13, 2002 depositions of Nancy Slater Thompson. Ex. 15. Ms. Slater-Thompson was employed in the DOE's Spent Fuel Program at the time of these depositions, working in its Regulatory Coordination Division. Id. (4/21/99 tr. at 5:25-6:13; 6/13/02 tr. at 5:2-6:25).

Ms. Slater Thompson joined the DOE's Spent Fuel Program in August of 1991. Id. 6/13/02 tr. at 8:15. From 1991 until 1995, Ms. Slater-Thompson was involved in "schedule" issues, such as the preparation of Annual Capacity Reports ("ACRs"), Annual Priority Rankings ("APRs"), exchanges, and shutdown priority, and she responded to questions internally and externally regarding the terms and conditions of the contracts between the DOE and utilities. Id. (4/21/99 at 19:21-22:10). The designated testimony of Ms. Slater Thompson all relates to schedule-related issues and therefore falls within the scope of her work at the DOE. As such, the testimony is admissible.

*Victor Trebules*

SMUD has designated portions of the deposition testimony of Victor Trebules from April 17-19, 2002. Ex. 16. Mr. Trebules was working as Director of the Office of Project Control at the DOE's Yucca Mountain Site Characterization Office in Nevada at the time of his deposition. Id. (4/17/02 tr. at 10:18-20).

Mr. Trebules has worked with the Government since 1972, starting at the Atomic Energy Commission, which became the Energy Research and Development Administration, which in turn became the DOE. Id. at 10:21-11:9. He began work in OCRWM as a Program Analyst in the 1983-1984 time-frame and progressed to become the Senior Technical Advisor and

[4] Ms. Slater Thompson was Ms. Slater on April 21, 1999 and April 22, 1999.

Technical Assistant to the Director of OCRWM. After a brief stint in the Secretary of Energy's Office in the late 1980s, Mr. Trebules returned to OCRWM in 1990 or 1991 and remained there until 1998 in various positions, including a position as Director of the Program Management Division, before he transferred to the Yucca Mountain Site Characterization Office. Id. at 17:7-18:17. His responsibilities included work on a proposed Monitored Retrievable Storage Facility and coordinating the preparation of DOE's 1985 Mission Plan. Id. at 16:5-17. The designated portions of Mr. Trebules' testimony relate to areas within the scope of his work at the DOE and are therefore admissible.

*Francis Young*

Plaintiff has designated portions of the trial testimony of Francis Young from the August 13, 2004 proceedings in the Yankee case. Ex. 19. At the time of his testimony, Mr. Young was employed by the Government as a Senior Transportation Program Manager in a division of the NRC. Id. (8/13/04 at 4:18-22).

Mr. Young joined the NRC in November, 1980. Id. at 7:11. From 1996 until 2002, he worked in the Spent Fuel Project Office of the NRC Id. at 8:2-12. Mr. Young's testimony relates to licensing and licensing requirements with regard to the storage of GTCC, both of which are within the scope of his employment at the NRC.

*Michael Lawrence*

SMUD has designated portions of the deposition testimony of Michael Lawrence from May 20, 2002 and May 21, 2002. Ex. 20. When deposed in 2002, Mr. Lawrence was a DOE employee, serving as the manager of DOE's Richland Operations Office. Id. (5/20/02 at 22:15-21).

Mr. Lawrence has served as the manager of DOE's Richland Operations Office since June 1984. In this position, Mr. Lawrence has responsibility for all of the opinions and programs

associated with the Hartford site. Id. Prior to this position, he served as direction of the NWPA Implementation Office at the DOE. 5/20/02 tr. at 24: 18-24. The designated testimony of Mr. Lawrence relates to the scope of his work and is admissible under FRE 801(d)(2)(D).

**3.** The Testimony of the Government's Rule 30(b)(6) Witness is Admissible Against the Government as Substantive Evidence Under RCFC 32(a)(2)

Pursuant to RCFC 32(a)(2), SMUD seeks to enter into evidence relevant excerpts from the 30(b)(6) deposition of Susan Klein, taken on April 24 and April 25, 2002. Ex. 21. RCFC 32(a) allows deposition testimony to be used against any party who was present or represented at the taking of the deposition if any of the conditions set out in RCFC 32(a)(1)-(3) are met, provided that testimony would be admissible under the rules of evidence applied as though the witness were then present and testifying. As such, deposition testimony falling within the scope of RCFC 32(a) will not be excluded as hearsay unless the contents of the testimony itself raise hearsay issues. Under RCFC 32(a)(2), the deposition of "a person designated under RCFC 30(b)(6) … to testify on behalf of a … governmental agency which is a party" may be used by an adverse party for any purpose. RCFC 32(a)(2); Weaver-Bailey Contractors, Inc. v. United States, 19 Cl. Ct. 474, 483 (1990). The witness need not be unavailable for deposition testimony to be admissible under RCFC 32(a)(2). Weaver-Bailey Contractors, 19 Cl. Ct. at 483.

During coordinated discovery, the Government offered Ms. Klein as a Rule 30(b)(6) witness on issues concerning DOE's responses to DCS forms submitted by the utility plantiffs, including DOE's decision to stop approving such DCS forms, DOE's obligation to accept GTCC waste, the role and purpose of the shutdown priority provision in the contract, and the acceptance rate DOE is planning once acceptance of fuel begins. See Ex. 22, Notice of Rule 30(b)(6) Deposition, April 18, 2002. The Government was present at Ms. Klein's 30(b)(6) deposition on April 24, 2002, thus satisfying the requirement of RCFC 32(a). See Deposition of Susan Klein,

April 24, 2002. Accordingly, SMUD requests that the Court admit the attached, designated portions of Susan Klein's 30(b)(6) testimony as substantive evidence.

**4.** Designated Portions of Testimony of Government Contractors Should Be Considered Admissions of a Party-Opponent made by the Party's Agent Under FRE 801(d)(2)(D)

SMUD respectfully requests the Court to admit the trial and deposition testimony of certain Government contractors who were in an agency relationship with the Government, Ed Benz, Robert Burgoyne, and Billy Cole. See Ex. 23-24, 28. Under FRE 801(d)(2)(D), "a statement by the party's agent … concerning a matter within the scope of the agency" is considered a non-hearsay admission by a party-opponent and is admissible without a showing that the witness is unavailable to testify. An agency relationship must exist, the statement must be made during the existence of the relationship, and the statement must be made within the scope of the agency. See Columbia First Bank, F.S.B. v. United States, 58 Fed. Cl. 333, 341 (2003). As noted above, "[i]t is a 'widely-accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'" Globe Sav. Bank, 61 Fed. Cl. at 96-97 (quoting Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (7th Cir. 2003).

Although a contractor is not always an agent of the contracting party for all purposes, Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 564-65 (2003), DOE's relationship with its contractors, and more importantly, OCRWM's use of contractors is unique in its breadth and depth. As Judge Merow has observed in the Yankee cases, "[t]o a significant, if not exclusive extent, DOE's activities, duties and responsibilities under NWPA, have been and are conducted through its national laboratories and management and operation ("M & O") contractors." Order, Yankee Atomic Electric Co. v. United States, Sept. 17, 2004, at 5. Judge Merow explained that:

> Any distinction between a nuclear physicist preparing tonnage estimates for DOE under a direct employment contract versus the M & O contracts here is questionable, and at best a matter of degree. … These contractors were retained under unique circumstances to perform DOE's function, provided critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE.

Id. at 18-19.

The descriptions of the activities undertaken by Mr. Benz and Mr. Burgoyne during the relevant time period support this view of the close relationship between the DOE's contractors and the DOE. Both Mr. Benz and Mr. Burgoyne worked exclusively on DOE's SNF program for a period of many years, working for Government contractors who had M & O contracts with the DOE. See Ex. 23; Ex. 24. As Mr. Benz testified, during his time at Jacobs Engineering from 1997-1997 working on waste acceptance work, "[w]e were just on call to support, I think it was Dave Zabransky at the time." Ex. 23 at 7:20. They were in an agency relationship working on waste acceptance issues with the DOE at the time their testimony was given and during the time about which they gave testimony. As such, their testimony should be admissible as the non-hearsay admission of a party-opponent under FRE 801(d)(2)(D).

SMUD has also designated portions of the testimony of DOE contractor, Billy Cole from his March 12-13, 2002 depositions and from his trial testimony in Yankee on June 4, 2002. Ex. 28. At the time of his testimony, Mr. Cole still held the position of Vice President of Johnson Associates, Inc., although he had retired in 1999. Id. (3/12/02 tr. at 108:8-14, 113:5-20). From 1985 to 1999, Mr. Cole worked at DOE contractors, Johnson Associates, Inc. and Battelle/Pacific Northwest Laborabory, both of which played major roles in implementing theSNF program. Id. (3/12/02 tr. at 106:14-110:25). In his work as manager of waste acceptance for these companies, Mr. Cole was actively involved in a broad range of DOE SNF program activities. Id. (3/12/02 tr. at 111:1-113:4, 198:18-2000:11). Indeed, Mr. Cole

developed the acceptance rates set forth in the 1991 ACR. Id. (3/12/02 tr. at 178:7-19). Mr. Cole's designated testimony all relates to SNF acceptance rates, ACRs, and DCSs, and it therefore falls within the scope of his work as a contractor for DOE.

**5.** Designated Portions of Testimony of Retired Government Officials Should be Considered Admissions of a Party-Oppponent made by a Person Authorized by the Party to Make a Statement Concerning the Subject Under FRE 801(d)(2)(C)

SMUD has designated portions of deposition and trial testimony from three former senior DOE officials, Robert Morgan, Ben Rusche, and James Carlson. Ex. 25-27. Mr. Morgan was the first Director of the SNF program in 1983 and developed the initial Mission Plans. Mr. Rusche also was the politically-appointed Director of the Program starting in 1985. Mr. Carlson held a number of senior positions in OCRWM and worked for the DOE and its predecessor for 34 years. Ex. 25 (2/12/04 tr. at 12:19-13:21). Mr. Carlson was originally scheduled to be deposed at the time he was still employed, but due to delays for personal reasons, his deposition took place just after he retired from the DOE. The testimony of Mr. Carlson relates to these issues and can be admitted as the admission of a party-opponent under FRE 801(d)(2)(C).

The designated portions of testimony for these former officials should be considered to have been authorized by the Government when they chose to call Mr. Morgan and Mr. Rusche as witnesses in the Yankee trial. By doing so, the Government authorized these witnesses to make statements that are admissible as admissions of a party-opponent under FRE 801(d)(2)(C). Cf. Glendale Fed. Bank, F.S.B. v. United States, 39 Fed. Cl. 422, 424-5 (1997) (holding that the prior deposition testimony of an expert witness could be considered "authorized" once the party for whom he was acting as an expert called him as a trial witness).

**B. The Trial Testimony of Government Expert Witness Edward Abbott is Admissible as an Admission of a Party-Opponent made by a Person Authorized by the Party to Make a Statement Concerning the Subject Under FRE 801(d)(2)(C)**

Plaintiff seeks admission of designated portions of the trial testimony of Government expert witness, Edward Abbott, from the proceedings in Yankee Atomic Electric Co. v. United States, Case No. 98-128, United States Court of Federal Claims, under FRE 801(d)(2)(C). See Ex. 29. Mr. Abbott was proffered by the Government as an expert in the areas of nuclear plant operations, management of spent nuclear fuel, implementation of regulations applicable to nuclear utilities, and decommissioning cost estimates. 8/16/04 tr. at 5322:1-6. Mr. Abbott's statements are statements made by a person "authorized" to speak by the Government about those subjects and are therefore admissible as non-hearsay admissions by a party-opponent under FRE 801(d)(2)(C).[5] Although an expert witness is not an agent of the party and does not fall within the scope of FRE 801(d)(2)(D), an expert witness who is put forward by the party as a witness at trial will fall within the scope of FRE 801(d)(2)(C):

> By the time the trial begins, we may assume that those experts who have not been withdrawn are those whose testimony reflects the position of the party who retains them. At the beginning of trial we may hold the parties to a final understanding of their case and hence an authorization of their expert witnesses who have not been withdrawn. At this point when an expert is put forward for trial it is reasonable and fair to presume they have been authorized.

Glendale Fed. Bank, 39 Fed. Cl. at 424-5 (1997).

When the Government determined that Edward Abbott should testify at trial as their expert, they authorized Mr. Abbott to make statements "concerning the subject." FRE

---

[5] Over the Government's objection, Mr. Abbott testifed at the Yankee trial about, among other things, failed fuel, GTCC waste, and his opinion about the 2010 start date. 8/17/04 tr. at 5928:20-5930:22. Although the Government objected that Mr. Abbott was not being offered as an expert on these topics, each of them relates to the management of SNF and decommissioning estimates, topics for which the Government proffered Mr. Abbott as an expert. Id. at 5609:10-17.

801(d)(2)(C). As such, Mr. Abbott's testimony falls within the scope of FRE 801(d)(2)(C) and is admissible as the admission of a party-opponent.

**C. The deposition testimony of S. David Freeman and Rita Bowser is admissible under RCFC 32(a)(3)(B)**

Plaintiff seeks leave to admit as substantive evidence portions of the deposition testimony of SMUD witnesses, S. David Freeman and Rita Bowser. Ex. 30-31.

RCFC 32(a)(3) provides that "the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:…(B) that the witness is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition;…" RCFC 32(a)(3)(B). This deposition testimony is not subject to exclusion on hearsay grounds unless its contents contain hearsay. RCFC 32(a). The party against whom the deposition testimony is to be used must have been present or represented at the taking of the deposition. Id. Mr. Freeman is the former General Manager of SMUD and served in that position from 1990 to 1994. He has not been employed by SMUD since that time. Similarly, Ms. Bowser is a former SMUD employee who was spent fuel disposition manager in 1990 and 1991. She has not worked for SMUD since that time.

The Government took the deposition of Rita Bowser in the present action on September 16, 2004. Ms. Bowser resides in the United Kingdom and will not be in the United States during the time of trial. See Ex. 30. The Government took the deposition of Simon David Freeman on September 16, 2004. Mr. Freeman will be in Israel and Egypt from March 12 through April 5, 2005. Since trial is scheduled to run from March 21 through April 1, 2005, Mr. Freeman will not be present in the United States for any portion of the trial period. SMUD has not procured the absence of either witness, just learning this week that Mr. Freeman will be out of the country

during trial. Ms. Bowser and Mr. Freeman therefore fall within the scope of RCFC 32(a)(3)(B), since they will be out of the United States during the time of trial.

## III. Conclusion

For the reasons set forth above, this Court should grant SMUD's motion for leave to file designated deposition and trial testimony as substantive evidence.

DATED this 18th day of February, 2005.

Respectfully submitted,

s/ Howard Cayne by s/ Timothy R. Macdonald
Howard Cayne
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5899
Counsel of Record for
Plaintiff Sacramento Municipal Utility District

Of Counsel:
David S. Neslin
Timothy R. Macdonald
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
(303) 863-1000

CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Sacramento Municipal Utility District's Motion for Leave to File Designated Deposition and Trial Testimony as Substantive Evidence Pursuant to RCFC 32(a) and FRE 801(d) to be served electronically through the Court of Federal Claims Case Management / Electronic Case Filing System on February 17, 2005 upon the following:

Alan Lo Re
Todd Cochran
Commercial Litigation Branch, Civil Division
Attention: Classification Unit, 8th Floor
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

s/ Timothy R. Macdonald