# EXHIBIT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 98-488C

---

SACRAMENTO MUNICIPAL UTILITY DISTRICT,

Plaintiff,

vs.

THE UNITED STATES,

Defendant.

---

DEPOSITION OF JOHN R. McGRATH
January 12, 2005

---

Page 46

A I would say that's correct, yes.
Q And is that something you decided or was that something that the attorneys decided, that you wouldn't render an opinion on those issues?
A It was not in my scope of work at the outset, so I was not ever asked to do that.
Q Did you ever discuss those issues with the attorneys?
A May I ask you to restate what issues we're talking about so I can be sure of my answer?
Q Whether any of the delays that you've identified were attributable to unreasonable or inappropriate or irresponsible or negligent actions by SMUD.
A Not in the context of comparing this project to other project work -- other projects or industry work. But within the context of the parameters of this contract, the baseline schedule and how they performed against that schedule ultimately, again, some of those terms could be used as descriptive terms to how their performance was judged to their own schedule. But in the context of other projects and things like that, then, no, I did not -- I did not do that or discuss that with anyone.
Q Let me just make sure we've got a clear

Page 47

record on this issue. I understand that, again, your report attributes certain delays to SMUD and that you've determined that these delays exist by comparing the actual schedule to the baseline schedule.
But, again, even where you've identified and attributed delays to SMUD, you've not determined that those delays result from any unreasonable, inappropriate, irresponsible, or negligent conduct by SMUD, have you?
MR. LO RE: Objection, asked and answered.
A I don't believe so, but I would say that my description of the delays is what it is in the report. That would stand as the best evidence of what my opinion is on those issues.
Q (BY MR. NESLIN) Well, are you here rendering an opinion -- have you rendered an opinion that SMUD was negligent in administering this project?
A No.
Q Or that SMUD acted unreasonably or irresponsibly in administering this project?
A No, not with regard to the project as a whole.
Q Let me just confirm. You yourself don't have any experience with the design of spent nuclear fuel dry storage or transportation projects, do you?
A No.

Page 48

Q Or with the licensing of such projects, do you?
A No.
Q Or with the fabrication of such projects, do you?
A No.
Q Or with the loading of such projects, do you?
A No.
Q And neither of your colleagues who worked on this with you at Contract Solutions have such experience, do they?
A They do not.
Q Are you familiar with the concept of reasonable mitigation?
MR. LO RE: Objection, calls for a legal conclusion.
Q (BY MR. NESLIN) You may answer, sir.
A I'm not sure. I recognize the words, but I'm not sure what -- if it's a term of art, what it actually connotates.
Q Do you understand that in breach of contract cases plaintiffs can recover the reasonable mitigation of their losses; in other words, if the breach of contract causes a plaintiff to incur certain costs to

Page 49

avoid incurring other or greater costs, that plaintiffs can recover that as part of their damages?
MR. LO RE: Objection, calls for a legal conclusion, outside the scope of Mr. McGrath's expert opinion.
Q (BY MR. NESLIN) You may answer, sir.
A I'm familiar with that concept, yes.
Q You don't have an opinion on whether SMUD's development of the spent nuclear fuel dry storage and transportation system in this case was reasonable mitigation?
MR. LO RE: Same objection.
A No, I don't.
MR. NESLIN: Do you want to take a short break?
MR. LO RE: Yeah.
(Recess taken from 11:31 to 11:43 a.m.)
Q (BY MR. NESLIN) Mr. McGrath, let me just follow up on a couple of issues we discussed before the break.
Were there any e-mails between you or your colleagues at Contract Solutions and any of the other expert witnesses?
A Not between other expert witnesses. I only would e-mail Liz occasionally.