# Exhibit 11

Written Direct Testimony of Brian P. Brinig Supporting Table C

*SMUD v. USA* 98-488c

SMUD
SACRAMENTO MUNICIPAL UTILITY DISTRICT □ P. O. Box 15830, Sacramento CA 95852-1830, (916) 452-3211
AN ELECTRIC SYSTEM SERVING THE HEART OF CALIFORNIA

August 27, 1996

PACKAGING TECHNOLOGY INC
4507-D PACIFIC HIGHWAY EAST
TACOMA WA 98424-2633

**SMUD PROFESSIONAL SERVICES CONTRACT NO. G703**

This contract by and between the Sacramento Municipal Utility District (hereinafter "District"), and Packaging Technology, Inc. (hereinafter "Contractor"), sets forth the terms and conditions under which the Contractor will provide the services described herein. The District and the Contractor agree as follows:

**1. SCOPE OF SERVICES**

The Contractor agrees to perform engineering design, structural analysis and fabrication of an impact limiter system for installation in the Spent Fuel Pool at the District's Rancho Seco Nuclear Station in accordance with the specifications and requirements of District Request for Proposal No. C96144 and the Contractor's proposal dated August 9, 1996 in response thereto, both of which are included herein by this reference.

**2. TERM OF AGREEMENT**

The term of this agreement shall be from August 28, 1996, to August 25, 1997, unless changed by mutual written agreement of the contracting parties. The approximate schedule for major project milestones is as follows:

| Milestone | Date |
|---|---|
| Deliver bill of material | October 15, 1996 |
| Complete Spent Fuel Cask Impact and Structural Analysis without Impact Limiters | November 1, 1996 |
| Deliver Impact Limiter Fabrication Design, Drawings and Specifications | December 1, 1996 |
| District Issuance of Notice to Proceed With Impact Limiter Fabrication | December 31, 1996 |
| Delivery of Completed Impact Limiter System | March 15, 1997 |

SMUD_ 101068

20 019

## 3. CONTRACT MANAGEMENT

The Contractor shall report to and receive work assignments from the District Contract Manager.

## 4. NOTICE TO PROCEED

A. The Contractor shall not commence work hereunder until issued written Notice to Proceed from the Contract Manager which shall be issued at the earliest practical date after execution of the Contract documents and acceptance of any required bonds, certifications, affidavits and evidence of insurance. Contractor shall, upon receipt of Notice to Proceed commence, with diligence, performance of Contract work.

B. The District's Contract Manager shall promptly issue interim notices to proceed for completion of fabrication drawings/specifications and actual fabrication activity in accordance with the impact and structural analysis and regulatory agency determinations.

C. All material and aspects of services provided hereunder shall be subject to inspection, examination and testing by the Contract Manager, or his/her designee, at any time during the term of this agreement. The Contractor shall provide and maintain proper facilities and safe access for such inspections or testing. Should tests prove the material or services in question are defective or inadequate, the cost of the tests shall be borne by and charged to the Contractor.

D. The Contract Manager or his/her designee shall have the right to reject defective material and services provided hereunder. Rejected services shall be corrected and rejected material shall be replaced with proper material, to the satisfaction of the Contract Manager and without charge to the District. The Contractor shall promptly segregate and remove any rejected material. If the Contractor fails to proceed at once with the replacement of rejected material or the correction of defective services, the District may, at its sole discretion, replace such material or correct such services, the charges and cost thereof are to be borne and charged to the Contractor.

## 5. PERSONNEL

All Contractor personnel assigned to this contract shall be fully qualified for required engineering services and approved by the District prior to their assignment to contract activities. The Contractor shall confirm that the technical qualifications of all personnel assigned to this contract meet the applicable industry standards. The qualifications standards and procedures used to provide personnel to perform required services under this agreement shall be made available for District review upon request. The Contractor shall ensure that, to the extent within his control, the personnel approved will remain on the project for the full term of the assigned task.

## 6. PERFORMANCE STANDARDS

Services shall be performed in accordance with the terms of this contract, applicable laws and regulations, existing licenses, District procedures and quality assurance standards, and industry technical guidelines. Work in progress, deliverables, and finished products will be reviewed by the District for completeness, compliance with required standards, and responsiveness to contract requirements.

The Contractor warrants that the services provided hereunder shall conform with the highest standard of care and practice appropriate to the nature of the technical and professional services rendered, that the personnel furnishing said services shall be qualified and competent to perform the services assigned to them, and that the recommendations, guidance, and performance of such personnel shall reflect their best professional knowledge and judgement, but makes no other warranty, express or implied. The Contractor shall be required to correct, at its own cost and expense, all deficiencies in the performance of the contract services which are detected within one year from the date of completion of the defective service.

## 7. QUALITY ASSURANCE

<u>Contractors Quality Program</u>

The Contractor shall have a quality assurance program satisfying the requirements of 10 CFR 50 Appendix B which shall control all contractors activities performed pursuant to this contract. The design and fabrication control shall assure that the finished product is qualified as a "basic component" as defined by 10 CFR 50.

Prior to proceeding with the contract work, the contractor will be placed on the District's Approved Suppliers List by review, audit and approval of the Contractor's quality program.

<u>Quality Requirements For Fabrication</u>

The hardware may be fabricated under the full control of a 10 CFR 50 Appendix B program or purchased as commercial grade items, and be dedicated as a basic component as defined in 10 CFR 21. If purchased as commercial grade items, the Contractor shall perform and document all inspections and test required by inspection planning for dedication of the components under the control of it's own quality assurance/control program. All fabrication documentation and material certifications demonstrating compliance with the design requirements shall be delivered to the District and are necessary for final acceptance and payment of the completed work.

20 021

## 8. CONTRACT PRICE AND COMMERCIAL TERMS

The District will compensate the Contractor as follows:

The total compensation due to Contractor under the terms of this Agreement shall not exceed $280,160.00 for all work performed pursuant hereunder. Said compensation shall constitute the District's maximum financial obligation under this agreement, any expenditures in excess of the amount set forth above shall not be reimbursed by the District and shall be deemed to have been incurred at Contractor's sole expense.

The District will compensate the Contractor at the rate(s) set forth in Appendix A.

The Contractor shall provide timely written notice to the Contract Manager and Contract Administrator when total expenditures under this agreement reach 70% of the authorized stated maximum expenditures.

The labor-hour billing rates shall include the following:

- Direct payroll costs.
- Benefits and burdens (including insurance, payroll taxes, vacation, holidays, sick leave, etc.).
- All overhead costs.
- Profit.

A. Payment for Contractor's engineering work will be based on the Contractors standard rates for engineering services and time and expense actually incurred up to the maximum amount defined in the contractors proposal. There will be no compensation for effort required to complete the required scope of work beyond the maximum limit. Payment will be made based on monthly progress billings less 20% retention to be paid upon final completion or termination of contract.

B. Material and subcontract cost shall be reimbursed at cost plus 48.66% markup with fabrication based on the fabricator's invoiced amounts plus markup. There shall be no retention on these expenses.

## 9. MANNER AND TIME OF PAYMENT

The Contractor shall submit monthly progress payment invoices in duplicate to the District.

Each copy of the invoice shall include verified time sheets which support direct labor costs and records which support all recoverable costs.

20 022

All invoices shall be mailed or delivered to:

Accounting Department, Mail Stop B302
Sacramento Municipal Utility District
6201 S Street, P. O. Box 15830
Sacramento, CA 95852-1830

The District shall process all uncontested invoices within 30 days following receipt thereof. The Contractor shall maintain books and accounts of personnel and other recoverable costs in accordance with generally accepted accounting principles and practices.

**10. ADMINISTRATIVE DATA**

The following administrative data pertains to this contract:

Contract Manager: Jim Field/Ron Lawrence (916) 732-4835
Principal Contract Administrator: John Bell (916) 732-6514

Charge Costs To: Cost Center 624; Activity Code/Work Order 604026
Resource Code 713

**11. INSURANCE REQUIREMENTS**

Without limiting any of the other obligations or liabilities of the Contractor, the Contractor shall provide and maintain until the work is completed and accepted by the District, insurance coverage in accordance with requirements established in Form X-2 which is included as Appendix B to this contract and by this reference is made a part hereof.

Contractor agrees, at all times hereunder, to provide the District a currently valid certificate of insurance, that names the District, its directors, officers, employees and agents as additional insureds on Contractor's general and auto liability policies with respect to work performed pursuant to or incidental to this agreement and provides a cross liability provision as specified herein. Such additional insured endorsement shall be on an unamended ISO Form CG-20-10-11-85 (Form B), or with prior approval of the District, such other form as the District may approve. The endorsement shall provide the District at least the same scope of coverage(s) as such policy provides for the Contractor and shall state that such coverage shall be primary to the District's coverages in all respects.

**12. INDEMNITY**

Only to the extent of Contractor's liability coverage, Contractor shall indemnify, defend, and hold harmless the District, its directors, officers, agents, and employees against all claims, loss, damage, expense, and liability asserted or incurred by other parties, including, but not limited to, District's employees and Contractor's employees, arising out of or in any way connected with the performance of this contract and caused by the acts, omissions, intent or negligence, whether active or passive, of

Contractor, its agents, employees, and suppliers, and excepting only such loss, damage, or liability as may be caused by the intentional acts or the sole negligence of the District.

## 13. APPLICABLE LAW

It is agreed that in the event of any litigation arising hereunder, the Contractor at the request of the District shall submit to the jurisdiction of any court of competent jurisdiction within the State of California and will comply with all requirements necessary to give such Court jurisdiction, and that all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that service of process in any such litigation may be made in the manner provided for in Section 415.4 of the California Code of Civil Procedure or in any other manner provided for in said code for service upon a person outside the State of California.

## 14. ASSIGNMENT

The Contractor shall not assign this contract or any monies due or to become due to him hereunder without the written consent of the District.

## 15. CHANGES

The District may initiate changes to the general scope and the general and special conditions of this contract as circumstances dictate. Changes which affect price, performance, schedule, warranties, or other significant items will be equitably adjusted by mutual agreement prior to the implementation of the change. All changes to this agreement shall be in writing and signed by the duly authorized representative of the parties hereto.

## 16. FORCE MAJEURE

Neither party hereto shall be considered in default in the performance of its obligations hereunder to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected party.

## 17. TERMINATION

The District may terminate Contractor's services under this agreement by giving the Contractor ten (10) days prior written notice of such termination. In the event of such termination, the District shall pay to the Contractor all personnel costs and recoverable costs incurred in the performance of such services, plus all reasonable costs incurred as a result of such termination. However, the Contractor agrees to waive any claim for damage, including loss of anticipated profit, resulting from contract termination.

## 18. DISCHARGE AND CANCELLATION OF TASKS AND SERVICES

The District may, at its sole discretion, discharge Contractor from performing any particular task or service to be provided or performed under the terms of this agreement, in whole or in part, upon giving Contractor written notice of such discharge. The District may also, at its sole discretion, cancel any task or service, in whole or in part, that has been assigned to Contractor to be performed under the terms of this Agreement upon giving Contractor written notice of such cancellation. The District agrees to pay the Contractor all personnel costs and other similar recoverable costs incurred in the performance of such services prior to notice of discharge or cancellation as set forth herein. The Contractor agrees to waive all claims for damage including, but not limited to, incidental and consequential damages such as loss of anticipated profit resulting from such discharge, discontinuance and/or modification as provided herein.

## 19. ASSIGNED PERSONNEL

The District reserves the right in its sole discretion, upon giving notice thereof to the Contractor, to suspend, dismiss, or otherwise discontinue and terminate the services, in whole or in part, provided by an individual assigned by Contractor, notwithstanding any other provision of this contract, to perform services under this contract. In the event of such suspension, dismissal, discontinuance or termination of Contractor personnel, the Contractor shall have the right, subject to the terms and conditions of this contract, to provide suitable replacement personnel.

## 20. SECURITY

Access to District facilities is controlled in accordance with specific site requirements. The Contractor's personnel must comply with the District's security requirements and guidelines.

## 21. AUDITS

The District shall have the right, during the Contractor's normal business hours for the duration of this Contract and for a period of three (3) years thereafter, to conduct the following audits either on District property or at the Contractor's offices, as the District may deem necessary:

- Audits of the Contractor's performance of services under this contract.
- Audits of books and accounts maintained to accumulate, record, and segregate personnel and other recoverable costs billed under this contract.

However, the Contractor will not be required to relocate records from their normal location.

Contractor shall include an audit provision providing the District with the audit rights set forth herein in all subcontracts entered into by Contractor hereunder.

20 025

Such audits shall be performed either by District personnel or by an independent third party whom the District may employ for the purpose of making such audits. The District and the Contractor shall establish procedures for performing such audits and shall preserve the confidential and proprietary status of audited documents and information.

## 22. INDEPENDENT CONTRACTOR

It is understood that the Contractor is an Independent Contractor and not an employee of the District and, as such, is responsible for any obligation of which an Independent Contractor has including, but not limited to, state and federal income tax, worker's compensation payments, social security, and unemployment insurance costs. Contractor agrees to indemnify, defend, and hold harmless the District from any liability which may result from the determination of any entity that the Contractor was not an Independent Contractor or did not fulfill his obligations as an Independent Contractor. Specifically, the Contractor understands that the District will file form 1099 with the appropriate state and federal agencies under certain circumstances.

## 23. FRANCHISE TAX

The District shall withhold an amount equal to seven percent (7%) from payments made pursuant to the terms and conditions of this contract as set forth herein, to all independent contractors who are not residents of the State of California and who have not received an exemption from this requirement from the California Franchise Tax Board. This requirement applies to all contractors performing personal services in California, for which the district pays in excess of fifteen hundred dollars ($ 1,500.00) annually. California Franchise Tax Form 590 is provided as Appendix C.

(Ref. Cal. Rev. & Tax. Code § 26131 and Cal. Code of Regs., Title 18, §§ 18805, 18805-3)

## 24. EQUAL EMPLOYMENT OPPORTUNITY

The Contractor shall not discriminate against any employee or applicant for employment on account of race, religion, gender or sex, color or national origin, handicap or age. Contractor shall ensure that this requirement is applied to applicants and employees in actions including, but not limited to employment, upgrading, promotion, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation and selection for training, including apprenticeships.

## 25. MINORITY/WOMEN OWNED BUSINESS ENTERPRISES

It is the policy of the District that minority and women business enterprises shall have the maximum opportunity to participate in the District's contracts. In this regard, District contractors shall take all necessary and reasonable steps in accordance with the solicitation upon which this contract is based, to ensure that minority and women business enterprises have the maximum opportunity to participate in this contract to the extent applicable. Contractor shall not discriminate on the basis of race, religion,

sex, color or national origin, handicap or age in the award or performance of any contract or subcontract resulting from or relating to these services.

## 26. HAZARDOUS MATERIALS

A. The Contractor and all subcontractors retained by Contractor to perform any services hereunder shall, prior to the commencement of any work hereunder, procure and provide the Contract Manager with:

i. Material Safety Data Sheets ("MSDS") for all hazardous substances as defined by California Code of Regulations, Title 8, Section 5194 which may or will be brought to the work site;

ii. The location where the hazardous materials will be stored and/or used in conjunction with the performance of any work hereunder; and

iii. A description of the labeling system used on Contractor's or any subcontractor's containers used for the handling, storage and/or transport of such hazardous materials.

iv. Identify the transporter of any hazardous waste and hazardous waste disposal facility used in conjunction with the performance of any work hereunder. Said transporter and disposal facility shall be subject to prior approval by the Contract Manager.

B. Contractor shall furnish the Contract Manager with the name and telephone number of the individual responsible for administering Contractor's or any subcontractor's hazardous materials communications program. Contractor and its subcontractors shall, upon request, provide the Contract Manager with written evidence of Contractor's or any subcontractor's employee training associated with the handling of hazardous materials.

C. The Contractor and its subcontractors shall perform all work in accordance with all applicable federal, state and local laws, rules, regulations and ordinances pertaining to hazardous waste management.

## 27. COMPLIANCE WITH LAWS, PERMITS AND LICENSES

The Contractor, its subcontractors, and employees shall keep themselves fully informed of and in compliance with all laws, ordinances and regulations that may affect employees performing work, related to the materials used in the work, or in any way affecting the execution of any work performed hereunder. Contractor shall also keep itself informed of and in compliance with all orders and decrees of bodies or tribunals having any jurisdiction or authority over the jobsite or the work. All permits and licenses required and/or necessary for Contractor's performance hereunder shall be the responsibility of the Contractor. The Contractor shall pay all permit fees, license fees, and any other costs incurred to meet compliance with the terms thereof, and shall give all necessary notices incident to the due and lawful prosecution of work whether such permits or licenses are obtained by the District or by the

Contractor. These costs include any incurred due to requirements imposed by any agency as a result of the Contractor's operations or Contractor's failure to otherwise meet the requirements of the permits or licenses. A copy of all required permits and licenses obtained by the Contractor shall be provided to the Contract Manager immediately after issuance.

**28. INCORPORATION**

All appendices, exhibits and attachments referenced above are hereby incorporated herein by this reference.

**29. ENTIRE AGREEMENT**

This Agreement, together with any and all appendices, exhibits and/or attachments attached hereto and any amendments, modifications, change orders, addendum and/or any other documents attached hereto and incorporated herein constitutes the entire agreement between the parties hereto and no changes, alterations, or modifications hereof shall be effective unless made in writing and signed by duly authorized representatives of both parties to this Agreement.

ACCEPTED FOR THE
SACRAMENTO MUNICIPAL UTILITY DISTRICT

By: [signature] Date: 9/10/96
John DiStasio
Manager, Material & Contract Services

ACCEPTED FOR
PACKAGING TECHNOLOGY INC

By: [signature] Date: 9/17/96

Donald A. Jensen
Type or Print Name

Project Manager
Type or Print Title

Appendix A - Contractor's Rate Schedule
Appendix B - Insurance Requirements, SMUD form X-2
Appendix C - California Franchise Tax Board, Form 590

[Professional Services Contract v.03 – 4/95] 20 028

SMUD
SACRAMENTO MUNICIPAL UTILITY DISTRICT 6201 S Street, P. O. Box 15830, Sacramento, CA 95852-1830 (916) 452-3211

RECEIVED
JUN 1 3 1999
Pac Tec

# CONTRACT CHANGE

CONTRACT NO. G703 CHANGE NO. 10

Engineering Analysis, Design and Fabrication
*Contract Title*

Of Spent Fuel Pool Impact Limiter System
*Contract Scope*

| FOR INTERNAL USE ONLY |
|---|
| W.O./DIST. NO. 604026 |
| PROJECT |
| COST CENTER 624 |
| RESOURCE 713 |

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called he District, and PACKAGING TECHNOLOGY, INC., 4507-D PACIFIC COAST HIGHWAY EAST, SUITE D TACOMA, WA 98424-2633

ereinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above umbered contract between the parties; hereinafter called the "original contract":

Article 1, SCOPE OF SERVICES—

Add the items of additional raw material acquisition, fabrication and Quality Assurance and engineering services negotiated between the parties and summarized in Packaging Technology, Inc. proposal dated May, 13, 1999 for a total fixed price of $7,547.19. Add the machining of the link lift hook for an amount not to exceed $500.00.

Article 8, CONTRACT PRICE AND COMMERCIAL TERMS —

The total contract amount is changed to not to exceed $950,000.00, an increase of $8,665.00 (rounded up from $8,047.19) with this Change Order No. 9.

The Contractor is authorized to invoice for Impact Limiter System components upon completion of fabrication and Quality Assurance release in lieu of delivery of said components due to District arranged load testing of sling and sling yoke link pin at another vendor's facility subsequent to completion of fabrication. Contractor will store all completed items at Contractor expense during period of such testing and will ship items upon completion of testing activities.

ALL OTHER TERMS AND CONDITION REMAIN THE SAME

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are t expressly superseded in this Contract Change.

| SACRAMENTO MUNICIPAL UTILITY DISTRICT | PACKAGING TECHNOLOGY, INC. *Contractor* |
|---|---|
| [signature] 6/11/99 *Date* | By [signature] 6/21/99 *Date* |
| Name ROBERT A. LITTLE | Type Name Kirk H. Brownell |
| le PROCESS OWNER, SUPPLY CHAIN SERVICES | Title Contracts Administrator |

20 029

3cc10.doc

SMUD-0245 5/93 (CC.DOT)

Page 1 of 1

SMUD
SACRAMENTO MUNICIPAL UTILITY DISTRICT

RECEIVED
MAR 15 1999
Pac Tec

# CONTRACT CHANGE

6201 S Street, P. O. Box 15830, Sacramento, CA 95852-1830 (916) 452-3211

CONTRACT NO. G703 CHANGE NO. 9

Engineering Analysis, Design and Fabrication
*Contract Title*

Of Spent Fuel Pool Impact Limiter System
*Contract Scope*

**FOR INTERNAL USE ONLY**

W.O./DIST. NO. 604026

PROJECT

COST CENTER 624

RESOURCE 713

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called he District, and PACKAGING TECHNOLOGY, INC., 4507-D PACIFIC COAST HIGHWAY EAST, SUITE D TACOMA, WA 98424-2633

ereinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above umbered contract between the parties; hereinafter called the "original contract":

Article 1, SCOPE OF SERVICES---

Add the following items of additional work, identified as Phase 2B, in accordance with the Contractor's fixed price bid dated February 11,1999:

1. Provide necessary procurement services, fabrication supervision and Quality Assurance services for the scope of supply listed on the Contractor's Fixed Price Bid for Phase 2B Hardware dated February 11, 1999. Fixed Price Bid:

| | |
|---|---|
| Hardware Costs: | $152,683 |
| Engineering and QA Support Costs | $ 43,852 |
| Total Cost | $196,535 |

2. Provide for delivery to the District's Rancho Seco Nuclear Station.
3. Complete the Quality Assurance Data Package.
4. Obtain required laboratory testing of raw materials through Lehigh Testing Laboratories, Inc., New Castle, Delaware.

Article 8, CONTRACT PRICE AND COMMERCIAL TERMS ---

The total contract amount is changed to not to exceed $941,335.00, an increase of $196,535.00 with this Change Order No. 9.

ALL OTHER TERMS AND CONDITION REMAIN THE SAME

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are expressly superseded in this Contract Change.

SACRAMENTO MUNICIPAL UTILITY DISTRICT

[signature] 3-9-99
Date

Name ROBERT A. LITTLE

le MANAGER, MATERIAL & CONTRACT SERVICES

PACKAGING TECHNOLOGY, INC.
*Contractor*

By [signature] 3/15/99
Date

Type Name KIrk H. Brownell

20 030

Title Contracts

Scc9.doc

SMUD-0245 5/93 (CC.DOT)

**SMUD**
SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P. O. Box 15830, Sacramento, CA 95852-1830 (916) 452-3211

# CONTRACT CHANGE

CONTRACT NO. G703 CHANGE NO. 8

Engineering Analysis, Design and Fabrication
*Contract Title*

Of Spent Fuel Pool Impact Limiter System
*Contract Scope*

**FOR INTERNAL USE ONLY**

W.O./DIST. NO. 604026

PROJECT

COST CENTER 624

RESOURCE 713

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called the District, and PACKAGING TECHNOLOGY, INC., 4507-D PACIFIC COAST HIGHWAY EAST TACOMA, WA 98424-2633

hereinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above numbered contract between the parties; hereinafter called the "original contract":

Article 1, SCOPE OF SERVICES---

Add the following items of additional work in accordance with the Contractor's cost estimate dated November 3, 1998:

1. Revise Calculation ED-032, "Analysis of Drop Accidents During Spent Fuel Cask Handling Operations" ....., Estimated cost $8,000.00.
2. Provide a complete design, with supporting analyses and fabrication drawings, of the new interconnecting link to be used between the polyester cask lifting sling and the cask yoke. .......Estimated cost $9,000.00.

Article 2, TERM OF AGREEMENT---

Change to read:

"The term of this agreement shall be from August 28, 1996 to December 31, 1999, unless changed by mutual written agreement of the contracting parties."

ALL OTHER TERMS AND CONDITION REMAIN THE SAME INCLUDING THE CONTRACT CEILING AT $744,800

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are expressly superseded in this Contract Change.

| SACRAMENTO MUNICIPAL UTILITY DISTRICT | PACKAGING TECHNOLOGY, INC. *Contractor* |
|---|---|
| [signature] for — Date 12-3-98 | By [signature] — Date 1/20/99 |
| Type Name ROBERT A. LITTLE | Type Name KIRK H. BROWNELL |
| Title MANAGER, MATERIAL & CONTRACT SERVICES | Title CONTRACTS ADMINISTRATOR |

20 031

3cc8

SMUD-0245 5/93 (CC.DOT)

SMUD

# CONTRACT CHANGE

SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P. O. Box 15830, Sacramento, CA 95852-1830 (916) 452-3211

| FOR INTERNAL USE ONLY |
|---|
| W.O./DIST. NO. 604026 |
| PROJECT |
| COST CENTER 624 |
| RESOURCE 713 |

CONTRACT NO. G703 CHANGE NO. 7

Professional Services
*Contract Title*

Engineering Analysis, Design and Fabrication
*Contract Scope*

Of Spent Fuel Pool Impact Limiter System

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called e District, and PACKAGING TECHNOLOGY, INC., 4507-D PACIFIC COAST HIGHWAY EAST TACOMA, WA 98424-2633

reinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above mbered contract between the parties; hereinafter called the "original contract":

Article 1, SCOPE OF SERVICES ---

Add the engineering design, completion of safety analysis, development of fixed price quotations and vendor selection effort titled Phase 2A and described in the attached documents extracted from the Contractor's proposal dated May 14, 1998 and identified as Attachments A and B. This Change Order authorization provides for all items of work except those identified as the "Early Start" tasks listed in Change Order No. 6. The ·s or subject matters are as follows:

- Write procurement specification for the sling
- Design sling storage pan
- Create modification drawings for washdown platform and one inch shim plate
- Complete design of honeycomb support bracket and honeycomb pads
- Design means to support the south end of the plywood stack so as not to affect the OCC structural analysis
- Provide drawings of plywood sheets as full sized sheets
- Outer Cask Catcher (OCC) modifications
- Outer Cask Catcher (OCC) foundation modification and sand pit
- Develop fixed prices for the scope of hardware supply

This activity shall be accomplished on a time and materials cost reimbursement basis for the not to exceed amount of $85,305.00. The deliverables for the identified tasks of Phase 2A are described for the respective task in Attachment A.

The total contract amount is changed to not exceed $744,800.00, an increase of $64,800.00 with this Change Order No. 7.

The contract completion date remains February 28, 1999.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

SMUD_ 101081

20 032

Page 1 of 1

**SMUD**

SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P. O. Box 15830, Sacramento, CA 95852-1830 (916) 452-3211

# CONTRACT CHANGE

**FOR INTERNAL USE ONLY**

W.O./DIST. NO. 604026

PROJECT

COST CENTER 624

RESOURCE 713

CONTRACT NO. G703 CHANGE NO. 6

Professional Services
*Contract Title*

Engineering Analysis, Design and Fabrication
*Contract Scope*

Of Spent Fuel Pool Impact Limiter System

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called [th]e District, and PACKAGING TECHNOLOGY, INC., 4507-D PACIFIC COAST HIGHWAY EAST TACOMA, WA 98424-2633

[he]reinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above [n]umbered contract between the parties; hereinafter called the "original contract":

Article 1, SCOPE OF SERVICES —

Add the engineering design, completion of safety analysis, development of fixed price quotations and vendor selection effort titled Phase 2A and described in the attached documents extracted from the Contractor's proposal dated May 14, 1998 and identified as Attachments A and B. This Change Order authorization is limited to the "Early Start" tasks identified as follows:

Complete Design of No Topple Span
Complete Design of Washdown Extension
Complete Design of Polyurethane Foam Impact Absorber Blocks

This activity shall be accomplished on a time and materials cost reimbursement basis for the not to exceed amount of $20,328.80. The period of performance is one (1) calendar month. The deliverables for the "Early Start" tasks of Phase 2A are identified for the respective task in Attachment A.

The total contract amount of $680,000.00 remains unchanged.

ALL OTHER TERS AND CONDITIONS REMAIN THE SAME.

SMUD_ 101082

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are expressly superseded in this Contract Change.

SACRAMENTO MUNICIPAL UTILITY DISTRICT

[signature] 6/26/98
*Date*

[Type] Name ROBERT A. LITTLE

[Title] MANAGER, MATERIAL & CONTRACT SERVICES

PACKAGING TECHNOLOGY, INC.
*Contractor*

By [signature]
*Date*

Type Name Kirk H. Brownell

Title Contracts Manager

20 033

[c]c6.doc

SMUD-0245 5/93 (CC.DOT)

SMUD
SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P. O. Box 15830, Sacramento, CA 95852-1830 (916) 452-3211

# CONTRACT CHANGE

FOR INTERNAL USE ONLY

W.O./DIST. NO. 604026

PROJECT

COST CENTER 624

RESOURCE 713

'NTRACT NO. G703 CHANGE NO. 5

Professional Services
*Contract Title*

Engineering Analysis, Design & Fabrication
*Contract Scope*

Of Spent Fuel Pool Impact Limiter System

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called District, and Packaging Technology, Inc., 4507-D Pacific Coast Highway East, Tacoma, WA 98424-2633 ınafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above bered contract between the parties; hereinafter called the "original contract":

Change Order No. 5 modifies the Scope of Services as described in Change Order No. 4 and revises certain dollar ceilings established for ıs phases of work.

Add Phase 1 (A) Scope Of Services as follows:

Phase 1 (A) Provide additional cask drop analysis and evaluation of mitigation options as outlined in Attachment A.

ınal deliverable will be a detailed report of results of original Phase 1 and additional Phase 1 (A) analysis. The report shall include sufficient detail concerning drops studied and expected outcomes to form the basis of a submittal to the Nuclear Regulatory Commission in response to PA192, RAI 2. If any uncertainties remain regarding the expected outcome of Phase 2 final analysis, the nature and extent of the uncertainties shall be quantified.

In addition, the original Phase 2 proposal shall be amended to incorporate all Phase 1 (A) findings and complete the deliverables as described in the original Phase 1 Scope.

Add to Phase 2 Scope Of Services as follows:

Where modification of existing site facilities are proposed to mitigate the consequences of cask drops, prepare technical specifications and engineering drawings as required to completely describe the proposed work. These specifications and drawings will be used by the District to contract with others for performance of the work. For each task so specified, include an engineer's estimate of the expected cost of the contracted work.

SMUD_ 101083

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are 'essly superseded in this Contract Change.

| :RAMENTO MUNICIPAL UTILITY DISTRICT | PACKAGING TECHNOLOGY INC<br>*Contractor* |
| --- | --- |
| [signature] 12/3/97<br>*Date* | By [signature] 1/8/98<br>*Date* |
| Robert A. Little | Type Name Kirk Brownell |
| Manager, Material & Contract Services | Title Contracts Administrator |

5 5/93 (CC.DOT)

20 034

# CONTRACT CHANGE *Continuation*

Contract No. 5 Change No. G703

Add to CONTRACT PRICING the following stipulation:

Phase 1(A)

The Contractor shall perform all Phase 1 (A) work as described in the Technical Specification at the standard rates for engineering services as shown on the Supplemental Billing Rate Schedule attached to Change Order No. 4 for time and expense actually incurred up to a maximum of Two Hundred Seventy One Thousand Dollars ($271,000). This ceiling is exclusive of travel expense which shall be reimburse at cost.

Article 8, CONTRACT PRICE AND COMMERCIAL TERMS

Change the total authorized amount to $680,000. A decrease of $14,232. with this Change Order No. 5.

Appendix A, CONTRACTOR'S RATE SCHEDULE

Change the Contractor's August 9, 1996 Cost Estimate to read as follows for affected Tasks:

1. Pricing Schedule, Task B: Revise Maximum (Not to Exceed) cost from $53,805 to $86,811.

   This change provides payment, at cost, for additional unanticipated design effort associated with increased complexity of impact limiters over that contained in original bid scope.

2. Pricing Schedule, Task D: Revise Maximum (Not To Exceed) cost from $124,143 to $134,708.

   This change provides payment, at cost, for additional complexity of impact limiters over that contained in original bid scope.

3. Pricing Schedule, Total Contract (A—E above): Revised total from $307,532 to $351,103.

   (Incorporates changes to Tasks B and D above.)

4. Add to Supplemental Billing Rates Schedule as follows:

| | Straight Time Billing Rate/Hr. | Overtime Billing Rate/Hr. |
|---|---|---|
| Designer | $54 | $54 |

THER COMMERCIAL TERMS AND TECHNICAL CONDITIONS REMAIN UNCHANGED BY THIS CHANGE ORDER.

This Contract Change is subject to all provisions of the original contract and all provisions of any previous ict Changes which are not expressly superseded in this Contract Change.

AMENTO MUNICIPAL UTILITY DISTRICT Ray
Init.

Contractor Init.

20 035

S 5/93 (CC.DOT)

SMUD_ 101084

**SMUD**

# CONTRACT CHANGE

SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P.O. Box 15830, Sacramento CA 95852-1830 (916) 452-3211

CONTRACT NO. G703 CHANGE NO. 4

Professional Services
*Contract Title*

Engineering Analysis, Design and Fabrication of
*Contract Scope*
Spent Fuel Pool Impact Limiter System

| FOR INTERNAL USE ONLY | |
|---|---|
| W.O./DIST. NO. | 604026 |
| PROJECT | |
| COST CENTER | 608 |
| RESOURCE | 713 |

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called he District, and PACKAGING TECHNOLOGY, INC.
4507-D PACIFIC HIGHWAY EAST, TACOMA, WA 98424-2633

hereinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes n the above numbered contract between the parties, hereinafter call the "original contract":

Article 1, SCOPE OF SERVICES,

Include the following increase to the Scope of Services:

"The Contractor shall furnish necessary labor, equipment, computer programs and expertise to perform required analysis of accidental Spent Fuel Cask drops and determine the effect on the design of impact limiters and other hardware to mitigate the consequences of such accidental drops. The following documents are included in this requirement, and are incorporated herein by this reference:

VECTRA Calculation No. 2069.0206, Rev. 4 and District comments thereto
Packaging Technology, Inc. letter proposal dated February 11, 1997, Subject: Proposed Effort to Address SMUD's Comments Regarding VECTRA Analysis of Fuel Pod Unloading Program

VECTRA Calculation 2069.0206, Appendix A, "Cask Drop Analysis Criteria for Fuel Transfer Operations"

(Continued on next page)

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract hanges which are not expressly superseded in this Contract Change.

| SACRAMENTO MUNICIPAL UTILITY DISTRICT | PACKAGING TECHNOLOGY, INC. 20 036 |
|---|---|
| | *Contractor* |
| [signature] 8/20/97 *Date* | By [signature] 8/22/97 *Date* |
| Type Name John DiStasio for | Type Name Robert A Johnson |
| Title Manager, Material & Contract Services | Title President |

RECD AUG 28 1997

SMUD

SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ P. O. Box 15830, Sacramento CA 95852-1830, (916) 452-3211
AN ELECTRIC SYSTEM SERVING THE HEART OF CALIFORNIA



# CONTRACT CHANGE

CONTRACT NO. G703 CHANGE NO. 3

W.O./DIST. NO. 604026

RANCHO SECO NUCLEAR STATION/PROFESSIONAL SERVICES
*Contract Title*

PROJECT

ENGINEERING ANALYSIS, DESIGN AND FABRICATION OF SPENT
*Contract Scope*
FUEL POOL IMPACT LIMITER SYSTEM

COST CENTER 608

RESOURCE 713

**THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called** ie **District, and PACKAGING TECHNOLOGY, INC., 4507-D PACIFIC HIGHWAY EAST, TACOMA, WA 98424-2633** reinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above mbered contract between the parties; hereinafter called the "original contract":

TECHNICAL SPECIFICATIONS as included in Contract G703 by reference and listed within Section 2, Scope of Services are modified by the following additional provisions:

1. "The Contractor shall accomplish welding of all shroud skin seams and structural member joints on the impact limiters, which constitute enclosure of the foam material, to a quality level assuring 100% leak tight welds, and shall perform Non-Destructive Examination (NDE) (dye penetrant on stainless materials; magnetic particle on ferrous materials) inspection and testing to assure leak tight enclosure at time of shipment. The required "quality level assuring 100% leak tight welds" shall be limited to the successful completion of the dye penetrant and/or magnetic particle inspection and testing in accordance with normal code specifications and procedures. This increased requirement affects specification requirements at paragraphs 2.2.11 and 2.2.12. The cost for this requirement is $4385.67."

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are not ssly superseded in this Contract Change.

| ACRAMENTO MUNICIPAL UTILITY DISTRICT | PACKAGING TECHNOLOGY, INC. *Contractor* |
|---|---|
| [signature] for   8/25/97 *Date* | By [signature]   9-2-97 *Date* |
| Name John DiStasio | Type Name D.A. Jenson   20 037 |
| Manager, Material & Contracts Services | Title Project Manager |

245 5/93 (CC.DOT)

The Contractor shall furnish one additional sling required for rigging for load handling at a cost of $267.59 for the sling and $1209.00 for associated labor activity. Total cost increase: $1476.59.

3. The Contractor shall relocate the lifting lugs in accordance with Design Change Notices (DCN's) dated February 1, 1997 and March 1, 1997 relative to Drawings D-AF-101 and D-AF-104. Hardware and engineering services costs are $1,574.80.

Article 2, TERM OF AGREEMENT -

Change to read:
"The term of this agreement shall be from August 28, 1996 to February 28, 1999, unless changed by mutual written agreement of the contracting parties. The schedule for performance and completion of work authorized under Change Order No. 4 and delivery of completed impact limiter system shall be jointly coordinated by the contracting parties."

Appendix A CONTRACTOR'S RATE SCHEDULE -

Change the Contractor's cost estimate furnished in the proposal dated August 9, 1996 to read as follows:

| | ESTIMATED COST | MAXIMUM COST | NOTES |
|---|---|---|---|
| | $55,660 | $60,228 | Established by Change Order No. 2 |
| SK B | $52,327 | $53,805 | $1,477 sling engineering<br>$1,575 lifting lug relocation |
| SK C | $56,749 | $59,586 | Increase for California Sales and Use Taxes at 7.75% |
| SK D | $115,297 | $124,143 | Increased for California Sales and Use Taxes at 7.75% and NDE of welds ($4,385.47) |
| SK E | $ 3,630 | $ 9,770 | No Change |
| AL | $283,663 | $307,532 | |

20 038

-0245 5/93 (CC.DOT)

SMUD_ 101087

D.

Article 8, CON )CT PRICE AND COMMERCIAL TERMS )

Change the total authorized amount to $307,532.00, an increase of $20,652.00 ($7,437.00 additional work and materials, $13,215.00 for anticipated California State sales and use taxes) with this Change Order No. 3.

NOTE: California sales and use taxes will be accrued and submitted to the State Franchise Tax Board by the District.

LL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

20 039

Page 1 of 2

**SMUD**

SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P.O. Box 15830, Sacramento CA 95852-1830 (916) 452-3211

# CONTRACT CHANGE

CONTRACT NO. G703 CHANGE NO. 2

Rancho Seco Nuclear Station Professional Services
*Contract Title*

Engineering Services - Analysis/Design of
Spent Fuel Impact Limiter System
*Contract Scope*

| FOR INTERNAL USE ONLY | |
|---|---|
| W.O./DIST. NO. | 604026 |
| PROJECT | |
| COST CENTER | 624 |
| RESOURCE | 713 |

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called the District, and Packaging Technology, Inc., 4507-D Pacific Highway East, Tacoma, WA 98424-2633 hereinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above numbered contract between the parties, hereinafter call the "original contract":

Article 1, SCOPE OF SERVICES -

In so far as the Scope of Services includes the Technical Specifications attached to SMUD Request for Proposals No. C96144, those specifications are revised as follows:

- Paragraph 2.2.7

  Revise cask weight from 245,600 lb to 250,000 lb.

- Paragraph 2.2.11

  Revise buoyant weight of cask with fuel from 201,000 lb to 203,000 lb and empty buoyant weight from 160,600 lb to 163,000 lb.

Appendix A, CONTRACTOR'S RATE SCHEDULE -

Change the Contractor's cost estimate extracted from the proposal in response to SMUD Request for Proposals No. C96144 in the areas identified below:

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are not expressly superseded in this Contract Change.

SACRAMENTO MUNICIPAL UTILITY DISTRICT

By [signature] 1/2/97
*Date*

Type Name for John DiStasio

Title Manager, Material & Contract Services

PACKAGING TECHNOLOGY INC. 20 040
*Contractor*

By [signature] 1/8/97
*Date*

Type Name Robert A Johnson

Title President

SMUD_ 101089

# CONTRACT CHANGE *Continuation*

Contract No. G703 Change No. 2

Pricing Schedule, Task A

Revise estimated cost from $50,960 to $55,660.

Revise maximum (not to exceed) cost from $53,508 to $60,228

Pricing Schedule, Total Contract (A--E above)

Revise estimated cost from $259,152 to $263,852

Revise maximum (not to exceed) cost from $280,160 to $286,880.

:. Article 8, CONTRACT PRICE AND COMMERCIAL TERMS -

Change the total authorized amount to $286,880.00, an increase of $6,720.00 with this Change Order No. 2.

ıll other terms and conditions remained unchanged.

ıis Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract ıanges which are not expressly superseded in this Contract Change.

ıCRAMENTO MUNICIPAL UTILITY DISTRICT J.S. Init.

Contractor Init.

20 041

SMUD

SACRAMENTO MUNICIPAL UTILITY DISTRICT ☐ 6201 S Street, P.O. Box 15830, Sacramento CA 95852-1830 (916) 452-3211

# CONTRACT CHANGE

CONTRACT NO. G703 CHANGE NO. 1

Rancho Seco Nuclear Station

*Contract Title*

Engineering Services - Analysis/Design of

*Contract Scope*

Spent Fuel Impact Limiter System

| FOR INTERNAL USE ONLY | |
|---|---|
| W.O./DIST. NO. | 604026 |
| PROJECT | |
| COST CENTER | 624 |
| RESOURCE | 713 |

THIS AGREEMENT made by and between SACRAMENTO MUNICIPAL UTILITY DISTRICT, hereinafter called the District, and Packaging Technology, Inc., 4507-D Pacific Highway East, Tacoma, WA 98424-2633 hereinafter designated as Contractor, WITNESSETH: That the parties hereto mutually agree to the following changes in the above numbered contract between the parties, hereinafter call the "original contract":

A. TECHNICAL SPECIFICATIONS- as included in Contract G703 by reference and listed within Section 2, Scope of Services for SMUD Request For Proposal No. C96144.

Identified paragraphs of the Technical Specifications are revised as follows:

2.2 Dropped Cask Impact Velocity

Add the following:

As an alternate to the requirements specified above, the requirements of this section may be satisfied by installation of an impact limiter under the shelf area, resting at elevation 0' provided the impact velocities are corrected to reflect the actual final configuration. Energy absorption and velocity reduction associated with concrete failure and "punch through" of the shelf should be taken into consideration to the extent appropriate for a final conservative result.

2.2.4 Shelf Area Foundation

Add the Following:

As an alternate to the requirements specified above, the requirements of this section may be satisfied by installation of an impact limiter under the shelf area, resting at elevation 0' provided; 1, It is shown that failure of the shelf area and support walls interior to the pool from primary impact on the unprotected shelf do not result in damage to the 5' pool boundary walls and base slab such that the basic pool integrity and ability to contain water will be impaired or that through wall cracks will occur, and 2, It is shown that with the secondary

This Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract Changes which are not expressly superseded in this Contract Change.

20 042

SACRAMENTO MUNICIPAL UTILITY DISTRICT

[signature] 10/23/96
*Date*

Type Name John DiStasio

Title Manager, Material & Contract Services

PACKAGING TECHNOLOGY, INC.
*Contractor*

By [signature] 11-11-96
*Date*

Type Name Donald A. Jensen

Title Project Manager

# CONTRACT CHANGE *Continuation*

Contract No. G703 Change No. 1

impact on the impact limiter, supporting structure stresses will remain within the limits specified in attached Design Criteria NEPM 5103.1, "Current Civil/Structural Design Criteria for Existing Structure and Yard Additions and Modifications". All credible failure modes must be evaluated.

2.2.5 Installation Limitations

Revise to read as follows:

Impact limiters installed above the shelf or in the fuel loading pit shall be designed to be installed underwater simply by placing them in position with no provision for preparation of the supporting foundation or attachment to the foundation. Rigging attachments shall be designed for removal and reinstallation using long handled tools manipulated from above the water surface.

If impact limiters or supports are installed under the shelf area, it may be dewatered for the required work however, the installed equipment must be secured in place with no welded attachments or penetrations of the existing liner plate.

2.2.9 Maximum Deceleration

Revise to read as follows:

For all cask drops, regardless of vertical orientation or horizontal locations and for all drop velocities up to the maximum specified, with or without rigging, the impact limiters shall limit and distribute forces imposed on supporting structures such that the requirements of paragraphs 2.2.3 and 2.2.4 are satisfied.

2.2.10 Impact Limiter Height

Revise to read as follows:

The fuel loading pit impact limiter shall not exceed an overall height of 3′ 6″.

There is no height limit on the impact limiter to be installed on or under the shelf area.

Appendix A, CONTRACTOR'S RATE SCHEDULE -

Add the following classification and rate to the Personnel Billing Rates,

Table1 -

| Labor Classification | Straight Time Billing Rate/Hour | Overtime Billing Rate/Hours |
|---|---|---|
| Principal Engineer | $130.00 | $130.00 |

20 043

...er terms and conditions remained unchanged.

...s Contract Change is subject to all provisions of the original contract and all provisions of any previous Contract ...anges which are not expressly superseded in this Contract Change.

...CRAMENTO MUNICIPAL UTILITY DISTRICT ______ Init.

______ Contractor Init. 11/11/96

SMUD_ 101092